FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

NOV 1 3 2017

BY
DEPUTY_____

| | | |
|---|---|---|
| Ralph Lynn Ferguson, Jr, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  1:16cv272 |
| | § | |
| ERIC MARCINE DUNN, et al | § | |
| Defendants. | § | Jury Requested |

**PLAINTIFF'S RESPONSE TO
COUNTY DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIFTH AMENDED COMPLAINT
DOCUMENT 131**

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW Plaintiff, Ralph Lynn Ferguson, Jr., (hereafter "Plaintiff" or "Ferguson") in the

above described and numbered cause, and files this his Response to County Defendants' Motion to

Dismiss Plaintiff's Fifth Amended Complaint Doc. 131 and in support thereof,  Plaintiff states the

following:

**I. Plaintiff's response to County Defendants "I. Introduction and Argument"**

Plaintiff objects to Defendants use of Doc. 112 because that document was mooted by order of

Magistrate Judge Hawthorn in Doc. 133 on October 25, 2017.

Defendants In stating "Plaintiff's own pleadings and exhibits establish probable cause existed"

the Defendants are referring to Defendant Dunn's cruiser recording however Defendants have not

shown by the elements of any charge that Plaintiff has committed a criminal act because Plaintiff has

committed no criminal act(s).

County Defendants are saying there was probable cause and yet they are also distancing

themselves from the arrest by saying they were not personally involved in the arrest of Plaintiff both of which are wrong and Plaintiff's Fifth Amend Complaint clearly demonstrates the facts which makes County Defendants Motion to Dismiss merit-less.

Defendants state "Plaintiff's claims should be dismissed because County Defendants Ponthier, Hilton, Judge Mixson, and Judge Smith are entitled to prosecutorial and judicial immunity from Plaintiff's state law claims, ..."  Plaintiff has demonstrated the these defendants were acting outside the scope of their duty and without jurisdiction.

The Texas Tort Claims Act ("TTCA") reads in part.

Sec. 101.057. Civil Disobedience and Certain Intentional Torts. This chapter does not apply to a claim:  (2) arising out of assault, battery, false imprisonment, **or any other intentional tort**, including a
tort involving disciplinary action by school authorities.
Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985

Defendants state "Plaintiff's federal due process claim should also be dismissed, because Plaintiff does not allege a valid procedural right which he was denied."  The Constitution is a guarantee that offers a remedy for due process violation.  State law demands that an arresting official follow Code of Criminal Procedure Art 15.17 which is a procedure and that procedure was not followed causing Plaintiff injuries which are included in the present lawsuit.

## II. Response to "II. Procedural History & Background"

Document 93 "Order Overruling Objections and Adopting Report and Recommendation of United States Magistrate Judge" quoting Judge Clark "Because Ferguson has pled his best case against Ponthier, Hilton, Judge Mixson and Judge Smith, Ferguson's federal law claims against those defendants are **DISMISSED WITH PREJUDICE**."  Reiterating the above Judge Clark dismissed with prejudice "Ferguson's _**federal law claims**_ against those defendants" and as can be seen by Plaintiff's amended pleading since that time Plaintiff's has legitimate state claims against County

2

Defendants Ponthier, Hilton, Judge Mixson, and Judge Smith and these claims are out of the reach of the TTCA which does not cover intentional torts.

### III. Response to "Plaintiff's Factual Allegation"

Defendants are not stating Plaintiff's factual allegation.  Defendants are fancifully altering Plaintiff's well pleaded facts to suit their own defenses to the point of abuse.

Defendants claim they are taking lines from Plaintiff's Doc. 123 "Plaintiff's Fifth Amended Complaint" ¶ 22 and ¶ 24 however for their own convenience they have left out the word "**alleged**", an alleged Trans. Code violation.  In so doing Defendants are making the irrebuttable legal presumption with no substantive facts or evidence in support that Plaintiff was engaged in the regulatable activity of transportation which is to say they are ignoring the primary element of a Trans. Code violation which is one must be engaged in commerce or a for hire capacity.  Further, Plaintiff was not "driving" but was in fact in locomotion in his private car on the public roads of Texas.

Defendants are either implying there is something wrong with expensive limousine with black windows surrounding the back or are profiling Plaintiff's because his car is not an expensive limousine with blacked our windows all around the back.

At no time did Plaintiff "refuse" to do anything to which he was lawfully responsible to do. Plaintiff can not be said to "refuse" to do a thing to which Plaintiff is not liable to do.

Plaintiff concedes that Defendant Dunn felt threatened but this is no fault of Plaintiff and may be due to his training because the only thing that Plaintiff was doing which appears to have threatened Defendant Dunn is Plaintiff was holding Defendant Dunn to the rule of law.  Plaintiff invoked, demanded and protected his rights and for Defendant Dunn or Willis, Beckman, Thurman and Defendant Corkern to perceive a citizens rights as a threat is unreasonable behavior for law enforcement.

3

Defendants state "While Plaintiff was detained and remained in his vehicle, **Plaintiff asked NCSO Deputy Willis if he could leave, and Deputy Willis advised that he could not leave**. The exchange was the only communication between NCSO Deputies and Plaintiff, ..."

It is this 'exchange' that is precisely what makes Willis more than merely present. This is also a complete fabrication on the part of Defendants because Willis also attempted consensual conversation with Plaintiff in an effort to justify the unlawful detention of Plaintiff.  Defendants Willis, Beckman and Thurman were not merely present as has been previously stated but were active participants following the directives of Defendant Dunn who was violating Plaintiff's rights and are therefore just as culpable as Dunn in the eyes of the law.

Defendants state "After speaking with his supervisor, Trooper Dunn made the decision to remove Plaintiff from his vehicle. "  This is an assumption on the part of County Defendants and until Defendant Dunn makes his own statement County Defendants are being fanciful and frivolous in an effort to take advantage of a pro se litigant as they misrepresent facts to the court.  That being said Defendant Dunn did according to his cruiser recording make plans to in his own words "extract" Plaintiff from his car without ever having arrested Plaintiff or receiving an verbal threats of harm nor any physical gestures that could be interpreted as the same.  This is very important because Plaintiff has not yet been placed under arrest and Defendant Dunn without probable cause has " **made the decision to remove Plaintiff from his vehicle**".  This is unreasonable action for a public servant with the power to arrest with mere words.

Defendants state "NCSO Deputies were positioned to the side and behind Plaintiff's vehicle with their weapons drawn but not pointed at Plaintiff." And Defendant Corkern was pointing a gun at Plaintiff and had anyone of them accidentally fire their gun the standard law enforcement policy of 'if one shots all shot' was putting Plaintiff in unnecessary danger because the entirety of the situation did

4

not call for such extremes.  In fact there was no reason for Defendant Dunn to call for backup unless a citizen invoking their rights can be considered a threat to a public servant who having the power to call up unlimited backup feels threatened by citizens rights.  Law enforcement on this day were not enforcing the law but were showing the power they wield via tax dollars when they are not obeyed.

## IV. Response to "Arguments and Authorities"
### Ponthier, Hilton, Judge Smith and Judge Mixson

Defendant Mixson acted without and in total lack of any jurisdiction to remove Plaintiff's appointed counsel in his misdemeanor case and was so informed by Plaintiff at the time of the act which Mixson ignored.  Mixson had no jurisdiction at all to even hear much less make a ruling on matters in an active case in another court in another jurisdiction.  Judicial immunity is no remedy for acts made in complete lack of jurisdiction.

Defendant Smith was not acting judicially when she issued an arrest warrant which lacked probable cause and forgery of government documents is not a judicial function Smith was impersonating a public official.

Defendants are misapplying case law to mislead the court when stating  "However, absolute immunity from federal § 1983 claims extend to common-law state tort claims."  In reality Van de Kamp v. Goldstein, considers whether absolute immunity "extends to claims that the prosecution failed to disclose impeachment material, see Giglio v. United States, 405 U. S. 150 (1972), due to: (1) a failure properly to train prosecutors, (2) a failure properly to supervise prosecutors, or (3) a failure to establish an information system containing potential impeachment material about informants."  And the conclusion they came to was yes.  Van de Kamp v. Goldstein, does not grant absolute immunity for malicious prosecution in other regards.  At 423. "However, absolute immunity may not apply when a prosecutor is not acting as "an officer of the court," but is instead engaged in, say, investigative or

5

administrative tasks. Id., at 431, n. 33." Thus Prosecutorial immunity is not absolutely absolute.

Defendants use Loupe v. O'Bannon, 824 F.3d 534, 539 as "(absolute immunity applies even when acting maliciously, wantonly, or negligently); " Loupe's primary interest seems to be in absolute immunity which is limited to the **initiation** of a malicious prosecution not the furtherance of it.

Next Defendants raise Mowbray v. Cameron County, Tex., as "(upholding dismissal of intentional infliction of emotional distress claims on basis of absolute immunity)." However, Mowbray is primarily interested in § 1983 claims for conspiracy to violate civil rights, based on "(1) failure to disclose exculpatory evidence to Mowbray's defense counsel; (2) manufacture of false evidence; and (3) suppression of evidence. Before we can reach the § 1983 conspiracy claim, we must determine whether qualified immunity applies to each state claim. *Hale v. Townley,* 45 F.3d 914, 920-21 (5th Cir. 1995). If all three acts fall under qualified immunity, there can be no § 1983 conspiracy claim. *Id."*

The one thing that Van de Kamp, Loupe and Mowbray do have in common is this: "Under § 1983, prosecutors are entitled to absolute immunity for acts performed as advocates of the state." quoting directly from Mowbray.

Ponthier's malicious prosecution of Plaintiff concealed her ulterior motive of protecting Dunn from liable for unlawful arrest by obtaining a plea bargain and was not done in her performance as an advocate of the state. Ponthier's motive was to protect the ranks of her law enforcement while Stanley who intentionally delayed Plaintiff criminal case stood to gain a social advantage by protecting the officer that would turn into a money advantage far greater than anything he would get from helping Plaintiff. This plan to protect Dunn only fell apart when Plaintiff demanded Stanley do his job to which Stanley withdrew as Plaintiff's counsel. Plaintiff's mere mistake in claims on defendants are no cause to dismiss his claims.

6

Dunn's"Affidavit and Complaint for Warrant of Arrest and Detention" stated specifically that

Plaintiff was arrested for the non-arrestable ancillary charge of failure to identify and state the Plaintiff

also committed the ancillary charge of evading arrest while he sat in his car.  Thus the charges against

Plaintiff lacked probable cause and actually showed that Plaintiff could not have committed a crime

that did not exist.

Attached to Plaintiff's Third Amended Complaint is Exhibit 17 Stanley's April 1, 2015

Telephone Call to Ralph Ferguson some of which is include here as evidence of Plaintiff's claims.

Mr. Stanley: "OK so they do have you with failure to Identify.  So what it looks like ah, it looks like they've backed off of the uh'm, the Evasion, which I think they should.  I mean there's just nothing in here from what I've read that the officer wrote that has anything to do with you evading arrest or detention.  So I just I don't know how they would make that case. Now, the question is on the the ah ya know did did you have a duty to Identify?  Ah, under those circumstances.  And tell you what let's see and they're picking a specific section of the Penal Code which they're required to do so lets see and we don't have to defend everything we only have to defend what they're claiming.  So, lets look and see exactly what it is they're claiming.  Thirty eight  zero two.  OK.  Thirty eight  zero two under the Texas Penal Code. Person commits an offense if he intentionally refuses to give name, residence or date of birth to a Peace Officer who has lawfully arrested the person and requested the information.  **So at the point he ask you for that you weren't under arrest. "**

Regarding the pending felony Mr. Stanley told Plaintiff on April 1, 2015: **"... well I don't see where they get an evading.  Well, I mean theres just no evading, even at what he's putting down ...**  He's basically saying, what he turned in Failure to Identify Class C and then Evading Arrest.  So, let me look back over heres so I guess they did not pickup the charge for evading which would be good on their part cause t**here's no way for them to make that case.**  I don't know how their ... **that makes no sense to me why the cop would even think of that.**

Regarding why the misdemeanor had not been dismissed Mr. Stanley replied in part:  **"But there is no, there is no ya know set schedule about when a hearing is set or when a trial is scheduled just it varies."**  and then told of someone looking to hire him as an attorney "And I mean it's not a case I'm involved in he he's looking for a lawyer cause he just got notice ya know **8 years later** to show up for court."

Mr. Stanley's had one aim which was to prevent Plaintiff's misdemeanor from going to trial or

being dismissed because if Stanley were acting in Plaintiff best interest he would have filed a motion to

dismiss and if he were actually taking actions to protect Dunn from liability Stanley would have done exactly what he did do which was delay Plaintiff's criminal case to gain limitations in Dunn's favor.

Ponthier is also Ms. Tracy in the below transcript, was directly involved in the appointed of Stanley in Plaintiff's pending felony which he had not requested court appointed counsel. Mr Stanley knew what the case and pending case were about from the beginning and agreed according to Ponthier. The facts of this case show that Ponthier, Hilton and Stanley were seeking a plea bargain from Plaintiff and that plea bargain was sought to shield Dunn from liability for unlawful arrest. Stanley did not make a motion to dismiss in Plaintiff's criminal case and yet he supposedly worked with the prosecutor for months to resolve to no avail a charge that misdemeanor charge which lacked probable cause. Ponthier said the felony charge was **"somewhat questionable"** and Stanley said of the felony **"there's no way for them to make that case."** There was no way for them to make the misdemeanor case either and yet the one was active and the other was pending after nearly a year and when Stanley withdrew as Plaintiff's counsel to limit his legal malpractice liability then not a week passes and the felony is no-billed the the misdemeanor was dismissed. Such a conspiracy as this does not go by without some proof left in its wake and that proof is found in the fact that Stanley filed no papers into the case he was alleged appointed in, Dunn's criminal complaint on Plaintiff, Stanley's telephone conversation with Plaintiff and the transcript of Stanley's hearing for his motion to withdraw as Plaintiff's counsel.

Had a plea bargain been made Plaintiff would have been barred from seeking remedy for damages from Dunn and any others.

Attached to Plaintiff's Third Amended Complaint is and Exhibit 18 Transcript of Stanley's Motion to Withdraw Hearing held on July 17, 2015. The following are taken from the court reporters transcript to substantiate Plaintiff's claims of fraud and conspiracy behind the malicious prosecution of

8

Plaintiff in an effort to prevent Trooper Dunn from liability for unlawful arrest.

MS. TRACY: Your Honor, he also has a **felony evading charge pending**. So, he -- his court appointment was for both charges. He has a felony charge pending too.

MS. TRACY:  Yes, sir.  Our grand jury meets next Wednesday, the 22nd.  Just to clarify Mr. Stanley was appointed as counsel originally on the misdemeanor --

MS. TRACY: **And there was a felony charge that was somewhat questionable.** We were waiting for more information on it.  So, **in the meantime, Mr. Stanley agreed and was appointed** to handle both cases because we were hoping to be able to work everything out without ever needing to go to grand jury.  **So, that was the purpose of having the same attorney for both cases so that we could resolve everything and have somebody to speak on your behalf to see if it needed to be thrown out altogether or investigated further or a plea offer needed to be made.  And Mr. Stanley has been doing that all along, working with us to figure out a resolution to the case without it ever needing to go to grand jury.**  So, at this point, these months later, it's now going to the grand jury; and they may or may not bill him.  You have no idea.

MS. TRACY: **That's why originally he was appointed on the misdemeanor but is handling the felony too so we could try to work out a package resolution for everything.**

MS. TRACY: Just to clarify, even if Mr. Stanley's motion is granted today and he's allowed to  withdraw, you're going to appoint somebody to represent him on both cases. Right?

MS. TRACY: He'll still have an attorney to represent for both the misdemeanor and felony cases. It  would just be a different person.

MR. STANLEY: It is, Judge.  We have already covered the details of this. Since I've been on the case, **I've been working with Ms. Tracy to try to get this case resolved.** Without going into specific

conversations with regard to the case, it became clear to me last week or week before last that he is not happy with how I -- what my choice of handling the case was and how I've gone about handling that.

There was some comments made during those conversations that lead me to not be comfortable representing him anymore.  And so, I'm asking the Court to let me out. He's certainly entitled to an attorney and we have many around that will help him.  **Based on the relationship up to this point, I'm not the person who can adequately represent him at this point forward.**

THE DEFENDANT: **He spent three months negotiating with the District Attorney's Office when I think this thing could be solved with the proper measures in a matter of weeks,** if not, then he could explain it to me.

THE COURT: Explain to me how do you think this can be resolved in a matter of weeks when it hasn't gone to the grand jury yet.  Explain to me how you think it's going to be resolved in a couple of weeks.

Your case has not even gone to the grand jury yet.  We don't even know if it's going to be indicted.

THE DEFENDANT: With all due respect, Your Honor, we're in the wrong court. This man is my counsel in the misdemeanor.

THE COURT: If you get indicted. If you don't, you don't.  Listen to me:   Mr. Stanley's job is

9

this.  I think you're missing it.  I want to make it abundantly clear.  You're charged with a misdemeanor.  You asked for counsel.  You got appointed counsel on the misdemeanor.  That is a J.P. court issue that I do not here.  Okay.  **It got brought to my attention that when Mr. Stanley got appointed on that, he went and visited with the D.A.'s office.**  Okay.  And during that conversation Courtney advised him that on behalf of Newton County that **they are possibly going to pursue a felony charge** on failure to identify.  Okay. When they did that, they said well, Mr. Stanley has been appointed as counsel on the misdemeanor, while we're investigating that and trying to determine whether or not we're going to present that to the grand jury or not, let's have Keith represent you on that also.  It's the same incident. That's what's going on.  He's been talking to Courtney about, hey, you know what's the situation with the cases, going back and forth and talking to her about this felony indictment that may go forward.  And that's where it stands right now.

Now, your question, Mr. Stanley is asking this Court to withdraw.  He's been appointed for a potential felony that has not been indicted yet.  He's representing you on that and trying to see where the process goes through.  Okay.  If I remove him as counsel, yeah, I can do it on the felony too.  I can do that.  I can remove him on the felony charge or whatever.  It goes in hand with the misdemeanor charge, same result.  If he's uncomfortable representing you on a felony and you've got a misdemeanor charge on that deal too, I don't think the J.P. has a problem with me  saying they can't get along, I'm going to withdraw him from both cases.  Can I do that?  I think I can.

MR. STANLEY: Can I address that real quick.  The J.P. case he's not entitled to a court-appointed attorney in a J.P. case.  I would clarify that I'm appointed in the J.P. case.  I am appointed in the felony case, which is how I got into it.

MS. TRACY:  **Your Honor, I think he was originally arrested on the evading too.  I think he was arrested on both of them.  That's why he got a court-appointed attorney.**

THE DEFENDANT: This complaint does not say that at all.

MS. TRACY:  I don't remember.

THE DEFENDANT:  The complaint specifically states why I was arrested.

THE COURT: "... normally we appoint once you're charged with an offense."

MR. STANLEY: Judge, before we go off the record, I want to clarify for myself, his statement that I've not been working on the case, I extremely disagree with that.  I have been working on the case.  He  disagrees with how I've been working on the case, but I want it clear on the record, just in response to what he said earlier, I vehemently disagree with that. That's part of the problem.

MR. STANLEY: As I mentioned before, Judge, with all due respect to Mr. Ferguson, I'm the lawyer.  I decide how the defense is going to go.  That's a part of the reason I'm here.  We disagree on how I'm getting there.  I just want to make sure the record is clear on that.  I have been working on it.  I have nothing further.

THE COURT:  The basis of my ruling is this, you have not been indicted on this other charge, okay;  and since there's not actually a pending charge, **you're not entitled to counsel until you're indicted in my opinion.  So, we did it as a courtesy to you** because the class C runs parallel with this other charge.  … You're back down to class C.  You're not entitled to counsel there.

## V. Response to "Arguments and Authorities"

**Unlawful Arrest and Excessive Force Claims**

Plaintiff fails for good reason recognize how County defendants can claim; " Ferguson's Fifth Amendment Unlawful Arrest and Excessive Force Claims Against The NCSO Deputies Fail **Because His Complaint Shows They Were Not Personally Involved In The Arrest**" while at the same time County defendants say that Dunn's"Affidavit and Complaint for Warrant of Arrest and Detention" states probable cause for arrest.

Plaintiff has alleged that Dunn did give directives to Willis, Thurman and Beckman and Dunn's cruiser recording substantiate that Dunn, Thurman and Beckman made the plans to arrest Plaintiff while Willis was preventing Plaintiff from exercising his right liberty of locomotion and leave that place. "The plaintiff must demonstrate an officer's "overt personal participation" in the violation of his own rights, not someone else's. *Id.* There is no allegation that Officer Prejean gave any command, signal, or any other form of direction to the officers that prompted them to arrest and subdue Mesa." Mesa v. Prejean, 543 F. 3d 264 - Court of Appeals, 5th Circuit 2008.

Defendants Willis, Thurman and Beckman were so intertwined with the arrest of Plaintiff that anyone of them could have merely tapped on Plaintiff car with their gun and said 'your under arrest' and stepped into his place.

Defendants are so intertwined with the acts of Dunn that he could not and would not have made the arrest of Plaintiff without out **them**.

Defendants are so intertwined with Dunn that they were all in on the planning stage of "extracting" Plaintiff from his car to effect the arrest.  Dunn's cruiser video is very clear in this regard. Defendants Willis, Thurman and Beckman colluded mentally as is heard on Dunn's cruiser recording and acted physically in unison with Dunn.

Beckman, Willis and Thurman's very act of handing their guns in Plaintiff's presents was an

11

arrest of Plaintiff's liberty.

Plaintiff is unaware of people who stand around a police action with guns draw and considered not involved in that police action. Defendants have admitted that Willis did make contact with Plaintiff personally and in so doing did exactly what DUNN told him to do which as far as Plaintiff is aware could have been 'kill him if he moves' which would have been in keeping with the actions all around Plaintiff who had committed no unlawful act though he was surrounded by openly hostile law enforcement.

A law enforcement officer with his gun in his hand is most definitely looking to shoot somebody for a suspected violation of something or other perhaps for the high crime of an ***alleged*** seat belt violation.

Kanshari v. City of Houston, 2015 WL 6550832 at *10 (S.D. Tex.Oct. 28, 2015). Plaintiff object to the use of private law.

It is the totality of the incidence giving rise to the claim that must be considered.

Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007) at 417, ("[I]n a case where police effect an arrest without probable cause ... but use no more force than would have been reasonably necessary if the arrest or detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force."); Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1332 (11th Cir.2006) ("When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest."); cf. Bodine v. Warwick, 72 F.3d 393, 400 n. 10 (3d Cir.1995) ("Officers who detain a suspect unlawfully should be liable for the harm proximately caused by their tortious detention, but this will not necessarily include all harm resulting from the otherwise reasonable use of force to carry out the detention.")

Plaintiff's facts and Dunn's cruiser recording clearly demonstrate that their was no probable cause. Defendants are continuing to ignoring the lack of the primary element of the allegation of a Trans. Code violation which is that one must be engaged in commercial or a for hire capacity and Defendants continue to make the irrebuttable legal presumption with no substantive facts or evidence in

support that Plaintiff was engaged in the regulatable activity of transportation and subject to the Trans.

Code. Prove it.

Dunn could not have or would not have arrested Plaintiff without Beckman, Thurman, Willis

this much is clear. All of these law enforcement officials helped in the planning with Dunn to arrest

Plaintiff. At the time Dunn approached Plaintiff to tell him was under arrest they all approached

together guns drawn not to merely look at their guns but with the intent to use them though there had

been not threat to warrant such force. Beckman, Thurman, Willis may not have pointed their gun at

Plaintiff however their intent was to shot Plaintiff in the event Dunn so ordered otherwise there would

be no point in merely standing around with their gun in their hand.

Defendants defenses fail because Beckman, Thurman, Willis gave aid and support that was so

intertwined that Dunn could not have made the arrest of Plaintiff without them.

WILLIS was not in on the planning stage because he was actively preventing Plaintiff from

exercising his liberty.

WASHINGTON v. Bob Grant No. 94–56685 9th Circuit (1996)

In looking at the totality of the circumstances, we consider both the intrusiveness of the
stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was
restricted, United States v. Robertson, 833 F.2d 777, 780 (9th Cir.1987) ("Whether an arrest
has occurred depends on all the surrounding circumstances, including the extent to which
liberty of movement is curtailed and the type of force or authority employed."), and the
justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for
his safety to warrant the intrusiveness of the action taken.   E.g., United States v. Jacobs,
715 F.2d 1343, 1345–46 (9th Cir.1983) (per curiam).   In short, we decide whether the
police action constitutes a Terry stop or an arrest by evaluating not only how intrusive the
stop was, but also whether the methods used were reasonable given the specific
circumstances.   See Del Vizo, 918 F.2d at 824–25.   As a result, we have held that while
certain police actions constitute an arrest in certain circumstances, e.g., where the "suspects"
are cooperative, those same actions may not constitute an arrest where the suspect is
uncooperative or the police have specific reasons to believe that a serious threat to the safety
of the officers exists.   "The relevant inquiry is always one of reasonableness under the
circumstances."   Allen v. City of Los Angeles, 66 F.3d 1052, 1057 (9th Cir.1995) (quoting
United States v. Sanders, 994 F.2d 200, 206 (5th Cir.), cert. denied, 510 U.S. 1014, 114 S.Ct.

608, 126 L.Ed.2d 572 (1993)).

11.     The duration of the detention may also be a factor to consider.   The Seventh and Eighth Circuits have stated that the court should consider both the duration of the stop and the "degree of fear and humiliation that the police conduct engenders."   United States v. Lego, 855 F.2d 542, 544–45 (8th Cir.1988) (citing United States v. Serna–Barreto, 842 F.2d 965, 967 (7th Cir.1988)).Although the length of detention is relevant in some cases, in others the police tactics may be sufficiently aggressive and intrusive that even a brief stop is sufficient to constitute an arrest.   Cf. United States v. Delgadillo–Velasquez, 856 F.2d 1292 (9th Cir.1988) (holding that the stop constituted an arrest because "[t]he show of force and detention techniques used in this context are indistinguishable from police conduct in an arrest.").

## VI. Response to "Arguments and Authorities"
### Intermediary Rules Applies and Probable Cause Existed As a Matter of Law

Defendants state "Ferguson's admission that a Magistrate Judge issued an arrest warrant creates probable cause for his arrest as a matter of law." Plaintiff only "admits" to the existence of a forged document titled as an arrest warrant because the signer stated that probable cause exist when it did not. For probable cause to exist there must be the element(s) of the alleged crime. The crimes alleged in Dunn's criminal complaint of Plaintiff does not state any elements of the crime alleged and further more the so called crime is not an arrestable offense neither is the secondary offense of 'evading arrest'.

Plaintiff's showing of no probable cause is found in Plaintiff's Exhibit 5, Dunn's Criminal Complaint of Plaintiff dated August 5, 2014. and in DPS DEFENDANTS' MOTION TO DISMISS & BRIEF IN SUPPORT Doc. 34 at 9.

Facts supporting an arrest were not placed before an "independent intermediary such as a magistrate". Magistrate Judge Hawthorne in his Report and Recommendation Doc 61 which was adopted by Judge Clark stated "Dunn is not shielded by the independent intermediary doctrine". And Plaintiff has a claim that Defendant Smith intentionally forged the warrant for Plaintiff's arrest when she stated Dunn's complaint had probable cause.

Defendant Smith was no independent intermediary as is clear from  "JUDGE CONNIE

14

SMITH'S PAYMENT INSTRUCTIONS" attached to Plaintiff's Third Amended Complaint as Plaintiff's

Exhibit 12 and "Judge Connie Smith's Case Activity Notes" attached to Plaintiff's Fifth Amend

Complaint as Plaintiff's Exhibit 30.

## VII. Response to "Arguments and Authorities"
### Plaintiff's Fourth Amendment Claims Fail Because
### Independent Probable Cause Existed to Arrest Plaintiff

Dunn's Affidavit also lacked any elements of a Trans. Code violation which is that a person

would have to be engaged in ***commerce or for hire traffic.***   Defendants are ignoring the lack of the

primary element of the allegation of a Trans. Code violation which is that one must be engaged in

commercial or for hire activity.  Defendants are making an irrebuttable legal presumption with no

substantive facts or evidence in support that Plaintiff was engaged in the regulatable activity of

transportation.  Trans. Code is the regulatory arm of the Department of Public Safety found in Texas

Administrative Code Title 37 Part 1 Ch 1 Subchapter A Rule §1.2.2 (herein "Rule 1.2.2").  The Trans.

Code is a code of limited enforcement which unlike the Penal Code specifically sets out within the

code itself who is given authority to enforce the Code.  Furthermore, the DPS's Mission Statement Rule

1.2.2 in recognizing "commercial and for hire traffic" would of necessity have to recognize non-

commercial traffic and it does in Rule 1.2.1.

The controlling law for the Trans. Code is Texas Administrative Code Title 37 Part 1 Ch 1
Subchapter A Rule §1.2 Mission (herein "Rule 1.2")

The mission of the Texas Department of Public Safety is:
(1) to supervise traffic on rural highways;
(2) to supervise and regulate commercial and "for hire" traffic;
(3) to preserve the peace, to investigate crimes, and to arrest criminals;
(4) to administer regulatory programs in driver licensing, motor vehicle inspection, and
safety responsibility; and
(5) to execute programs supplementing and supporting the preceding activities.

The Texas Administrative Code continues to provide further evidence that the Coded is a code

of limited enforcement and does not regulate the people in their private lives is Rule 1.11, in pertinent

part:

> Title 37 Public Safety and Corrections Part 1 Texas Department of Public Safety Chapter 1 Organization and Administration Subchapter B Basic Doctrine Rule §1.11 Basic Doctrines (herein "Rule 1.11").
>
> (c) ***The department recognizes that government exists for the benefit of the governed-the people.*** Enforcement and regulatory actions against persons are carried out for the benefit of society as a whole. The department does not act to adjudicate or rectify injustices, inequities, or wrongs between individuals, but acts only to maintain order for the preservation and protection of society as a whole.
>
> (d) **It is a solemn obligation of members of the department to uphold the constitutions of the United States and the State of Texas** *as well as to enforce the statutory enactments.* **Constitutional provisions take precedence over statutory enactments. In the enforcement of the provisions of a statute, personnel of *the department of public safety will refrain from infringing upon any rights or privileges guaranteed by the constitutions*.**
>
> (f) **It is the policy of the department to assume primary responsibility for** traffic supervision on the rural highways of this state, including **the *regulation* of commercial traffic**.

Certainly "supervision" would be along the lines of "Bridge Out Ahead" or "Caution

Bridge Ices Before Road".  While on the regulatory side would be the enforcement of commercial

traffic carrying only weights within their weight range or regulating how many people can fit on a

bus.

Defendants quote several Trans. Code sections without acknowledging that the Trans. Code is

the regulatory are of the DPS's mission to "to supervise and regulate commercial and "for hire" traffic"

as stated in Rule 1.2.2 above.

At no time did Plaintiff "refuse" to do anything to which he was lawfully responsible to do.

Plaintiff can not be said to "refuse" to do a thing to which Plaintiff is not liable to do.

The Court now has irrefutable proof, that the Trans. Code is a code of limited enforcement and

that have not presented the Court with any elements of a Trans. Code violation by Plaintiff.

Taking well established Texas law into account Plaintiff has violated no laws.  Therefore,

Plaintiff's unlawful arrest claims against NCSO Deputies and Jailer Kelley prevail as a matter of law.

**VIII. Response to "Arguments and Authorities"**
**Plaintiff's Federal Due Process Claim Against Kelley Fails**

Texas Code of Criminal Procedure Article 15.17 clearly states that an accused person arrested without warrant shall be taken before a magistrate without unnecessary delay. Art 15.17 is legislatively created statute law not common-law, case law.

Dunn violated Texas Code of Criminal Procedure Article 15.17 creating a procedural due process violation on Plaintiff which he could not have done without the aid and under the directives of Kelley. Kelley aided Dunn in violating Plaintiff's procedural due process rights by locking Plaintiff in jail without commitment papers.

Defendants are using in their defense of unlawful arrest that they did not transport Plaintiff to jail while claiming that Kelley who actually locked Plaintiff in the jail prior to Smith's forging an arrest warrant is not an unlawful arrest of Plaintiff.

DUNN "Affidavit and Complaint for Warrant of Arrest and Detention" was not signed by Defendant Smith until after Plaintiff was already locked away behind bars and yet the very title gives it away. It is a request by Dunn to have a magistrate issue orders to have someone held in **DETENTION**. Kelley locked Plaintiff away before the the order was issued for Plaintiff's detention.

**IX. Response to "Arguments and Authorities"**
**All Ferguson's State law Tort Claims Must Be Dismissed**
**Pursuant To The Texas Tort Claims Act**

Defendants are misapplying case law to mislead the court. Defendants cases do not reflect the theory of Plaintiff's case.

It is clear Defendants are being fanciful with their wording to wit: "Second, based on Ferguson's allegations, it is clear that all individual defendants were acting within the general scope of

their employment." Plaintiff's claims on County Defendants are for acts clearly not within the general

scope of their employment.

Defendants in the face of Plaintiff's well plead claims which must accept as true and taken in a

light most favorable to Plaintiff the Defendants say their acts of intentional torts fail under this second

prong of the three-prong test is wrong "(2) the defendant is acting within the general scope of his

employment;". Defendant's acts are well outside the general scope of the employment as public

servants.

"The plaintiff's claims fail for another reason. Most of the plaintiff's allegations are for
intentional torts—false arrest, malicious prosecution, defamation. The Tort Claims Act does
not waive immunity for intentional torts of the City. Tex.Civ.Prac. & Rem.Code §
101.057(2); City of San Antonio v. Dunn, 796 S.W.2d 258, 261 (Tex.App.— San Antonio
1990, writ denied) (City immune from liability for false arrest of police officer)." See City
of Hempstead v. Kmiec, 902 SW 2d 118 - Tex: Court of Appeals 1995

"Finally, Henderson's claims fail for another reason. His claims—false arrest and malicious
prosecution—are for intentional torts. *See City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122
(Tex. App.-Houston [1st Dist.] 1995, no writ) (recognizing false arrest and malicious
prosecution as intentional torts). Section 101.057 of the TTCA provides: "This chapter does
not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other
intentional tort, including a tort involving disciplinary action by school authorities." TEX.
CIV. PRAC. & REM. CODE ANN. § 101.057(2) (West 2011). Thus, the TTCA does not
waive immunity for intentional torts, the only type of claims asserted by Henderson. *See
City of San Antonio v. Dunn*, 796 S.W.2d 258, 261 (Tex. App.-San Antonio 1990, writ
denied) (holding city immune from liability for false arrest by police officer)." See
Henderson v. IOWA COLONY, Tex: Court of Appeals, 1st Dist. 2016

## X. OTHER RESPONSES AND THINGS

For the record Defendants are acknowledging that Plaintiff's criminal case file was **removed**

from its duly authorized location of the JP Precinct 1 Court.

Morrows video response clearly shows edits that could not have happened on their own

therefore the editing was an intentional tort on the part of Morrow.

## CONCLUSION

Plaintiff has in this response and other pleading stated sufficient facts supported by statute and case law to maintain his claims on defendants CHARLES WILLIS, JOSH BECKMAN, BRANDON THURMAN, GWEN KELLEY, CONNIE SMITH, LINDA PITTS, ASHLEY MORROW, ROBERT SHANE HILTON, COURTNEY TRACY PONTHIER, and CRAIG M. MIXSON.

**WHEREFORE**, Plaintiff, Ralph Lynn Ferguson, Jr. respectfully requests that this court recognize Plaintiff's responses as adequate and sufficient to deny in its entirety County Defendants' Motion to Dismiss Plaintiff's Fifth Amended Complaint.

Respectfully submitted,

By: _Ralph Lynn Ferguson Jr._
Ralph Lynn Ferguson, Jr. Pro se
1192 Highway 27
DeRidder, Louisiana 70634
ralphsemail@hushmail.com
Phone:  337.462.2615
Fax:     337.462.0541

## CERTIFICATE OF SERVICE

I certify that on November 13, 2017, a copy Plaintiff's Response to County Defendants' Motion to Dismiss Plaintiff's Fifth Amended Complaint Doc. 131 was served on the following via USPS.

Larry James Simmons , Jr.
Germer, PLLC -Houston
2929 Allen Parkway
St. 2900
Houston, TX 77019

Sarah Crystal Dionne
(at the above address)

James Allen Payne, Jr.
Fairchild Price Thomas Haley – Center
P.O. Box 1719
Center, Texas 75935-1719

Christopher Lee Lindsey
Office of the Attorney General – Defense Div
300 W 15th Street
7th Floor
Austin, TX 78701

Pete Patrick
807 N. Margaret
Kirbyville, Texas 75956

Frank D. Calvert
2615 Calder Avenue, Suite 1070
Beaumont, Texas 77702

F Blair Clarke
(at above address)

And a complimentary copy of the style page and certificate of service page to the following.
Parvin Butler
P.O. Box 830
Newton, Texas 75966

Angie Brown
230 County Road 401
Kirbyville, Texas 75956

*Ralph Lynn Ferguson, Jr.*
Ralph Lynn Ferguson, Jr.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

Ralph Lynn Ferguson, Jr,                    §
                                            §
v.                                          §        CIVIL ACTION NO.  1:16cv272
                                            §
ERIC MARCINE DUNN ET AL                     §
                                            §        JURY REQUESTED

## **ORDER**

On this date came on to be heard, COUNTY DEFENDANTS' MOTION TO DISMISS

PLAINTIFF'S FIFTH AMENDED COMPLAINT.  After considering the motion, any response or any

arguments of counsel or pro se parties, and the evidence, the Court is of the opinion that COUNTY

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT should be

**DENIED** in its entirety.

It is therefore, **ORDERED, ADJUDGED** and **DECREED** that  COUNTY DEFENDANTS'

MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT be **DENIED**.