FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

NOV 13 2017

BY
DEPUTY_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| Ralph Lynn Ferguson, Jr, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:16cv272 |
| | § | |
| ERIC MARCINE DUNN, et al | § | |
| Defendants. | § | Jury Requested |

### PLAINTIFF'S RESPONSE TO
### DEFENDANT TIMOTHY WAYNE CORKERN'S 12(b)6) MOTION TO DISMISS
### PLAINTIFF'S FIFTH AMENDED COMPLAINT (Doc. 125)

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW Plaintiff, Ralph Lynn Ferguson, Jr., (hereafter "Plaintiff" or "Ferguson") in the above described and numbered cause, and files this his Response to Defendant Timothy Wayne Corkern's 12(b)6) Motion to Dismiss Plaintiff's Fifth Amended Complaint (Doc. 125) and in support thereof, Plaintiff states the following:

**I.** **Response to "NATURE AND STAGE OF THE PROCEEDING"**

Plaintiff's has no issues with par. 1 through 18 as presented in their motion.

**II.** **Response to "PLAINTIFF'S FACTUAL ALLEGATIONS AND DEFICIENCIES"**

Defendant is altering Plaintiff's facts to suit his own defenses. Plaintiff ask this Court to consider Plaintiff's well plead facts and the corrections Plaintiff offers here to Defendants overly voluminous motion to dismiss Plaintiff's Fifth Amended Complaint.

Response to ¶ 20: Defendant is being conclusory. Plaintiff was "pulled over" via emergency flashing lights for an "*alleged*" safety belt violation by a DPS Trooper trained to know what his job is.

Stating Plaintiff "failed to produce his license," implies that Plaintiff was required "to produce his license," however since the "license" is alluding to is found in the Trans. Code this would make Defendants statement conclusory and based solely on Defendant's irrebuttable legal presumption with no substantive facts or evidence in support that Plaintiff was engaged in the regulatable activity of transportation.

Defendant goes on to say Plaintiff **refused** to identify himself although theres has been evidence submitted that Plaintiff owed a duty to do any such thing and in fact Plaintiff ask Dunn several times if Plaintiff was under arrest to which Dunn either gave a non-answer or negative answer thus Plaintiff was not liable to identify himself.

Plaintiff ask this Court to consider how can a window partially rolled up be a "barricade" while aiming a gun long enough to get off 3 shots is said to be not "involved"?

Defendant is continues to use **refusal** to identify without offering the elements of a charge that would require Plaintiff to identify. Dunn ask Plaintiff to exit his car however Plaintiff did not **refuse** the invitation he declined. The difference being in the inference that Plaintiff owed a duty to comply however Plaintiff did not owe a duty to comply.

Defendants are using Dunn's criminal complain for its details however Dunn's details are inaccurate and anything in that affidavit and complaint is suspect because DPS Defendants have already admitted the complaint is in error in because Plaintiff was not lawfully subject to arrest for which he was arrested.

Dunn's criminal complaint is filled with other errors including the following:

* Plaintiff refused to provide any identifying information. Plaintiff was under no obligation to provide Dunn with identifying information.
* Plaintiff was being lawfully detained for a safety belt violation. Plaintiff was not engaged in the regulate-able activity providing such violation.
* "<u>unidentified</u> driver refused present or give any information about himself". Dunn

2

       had run a check on Plaintiff and obtained a picture of Plaintiff. Clearly Plaintiff had been identified.

*    "barricaded himself inside of unit 1". This never happened. False statement was conceded in Motion to Dismiss & Brief in Support Doc. 34 filed by DPS Defendants.
*    "unidentified driver refused to exit his vehicle". Dunn never gave Plaintiff the opportunity to exit his car after stating he was arresting Plaintiff.
*    Plaintiff would not provide Care Plus with Plaintiff's medical information – Plaintiff gave Care Plus more information than they required.
*    Fifteen (15) times "unidentified" though Dunn had obtained a picture of Plaintiff and knew who plaintiff's was early on.

      Response to ¶ 21: Defendant is really reaching here. Curtains magically become "sheets of cloth" when the magic will justify unreasonable behavior on the part of law enforcement. It must be noted, that law enforcement have a fascination with guns. It must also be noted that that fascination may have a tendency to justify (at least in their own heads) itself by their extending their obsessive fascination onto others and then claim they are threatened. Plaintiff objects to the preposterous inference by Defendant that Plaintiff's car justifies any of the defendants unreasonable and unlawful actions or that Plaintiff's car justifies criminal suspicion by law enforcement because it has curtains. Plaintiff is unaware of such law enforcement standards in regards to the wealthy, famous and powerful when they cruise the roads in the darkened limousine.

      The traffic stop that turned into an unlawful arrest should be focused more on the entirety of the circumstances including Plaintiff's non-aggressive demeanor as well as the delusional fears of law enforcement with their magic transformation of curtains into "sheets of cloth" or perhaps the reason for why the curtains transformed into sheets of cloth and boogie men hiding behind them should be the focus. The citizens should not be subjected to such unreasonableness of public servants. It should be further noted that some cars and many vehicles on the road have no curtains that transform into "sheets of cloth" but actually have all metal sides. What must law enforcement thinks of that must really be horrific. Plaintiff objects to the allegation that his car that may be referred to as a camper because of its

curtains excuse their unreasonable and unlawful actions against Plaintiff and recognize it for what is it which is a distractant from the real issues made the subject of this lawsuit.

Response to ¶ 24: A possible lack of extensive facts and facts placed in claims in Plaintiff's Fifth Amended Complaint has nevertheless given Defendant notice of Plaintiff's claims against him and which could be remedied in an amendment. However, Plaintiff's exhibits including 7 pictures of Defendant beside Plaintiff's car and exhibit 11 Dependant own "supplemental report" of the day supplement Plaintiff's facts and substantiates Plaintiff's written claims. Plaintiff's claims are not "thread bare" conclusions.

Perhaps 'Defendant had no **obvious** objective reason to use force' would suffice.

Defendant is clearly abusing the term "conclusory".

Response to ¶ 25: "Plaintiff in a conclusory fashion asserts his unqualified legal interpretation of the law, ...". Defendant is referring to Plaintiff's use of Texas Administrative Code Title 37 Part 1 Ch 1 Subchapter A Rule §1.2 Mission (herein "Admin. Rule 1.2"). Taking Defendant's approach and due to the simplicity and clarity of Admin. Rule 1.2, Defendant might as well say people should not answer the question 'what is the posted speed limit' because it would be giving legal advice. What is most notable is Defendant is not offering his own "interpretation" of a statute written in plain English.

Response to ¶ 28: Apparently the act of "... momentarily pointing rifle at Plaintiff." is nothing compared to the delusion that a boogie man is hiding behind Plaintiff's curtains that have transformed into "sheets of cloth".

Response to ¶ 29: Defendant has not demonstrated Plaintiff violated any elements of any crime related to the accusation "Plaintiff was not wearing his seatbelt properly;.." or "would not identify himself, produce his license, or step of the vehicle, ..." nor the "and later, would not state whether anyone else was in the **concealed** areas within the van;" of which this is a new statement from any

4

defendant. Plaintiff is unaware of any "concealed" areas in his car and believes this goes to the degree of the devaluation of law enforcement personnel over the years which causes them for whatever reason to see the average person as his deadliest enemy. Defendant is being fanciful in his latest suggestion and obsession with not being able to pry into the personal lives of the citizenry.

Defendants use of "only" and "merely" in this situation where he pointed a gun at Plaintiff for "approximately 8 seconds" which would be long enough to shot possibly 20 bullets into Plaintiff for invoking his rights is disturbing. "At no time does Plaintiff appear to be fearful." Enough fear not to take his hands off of the steering wheel and let Dunn unbuckle the seat belt he was wearing and enough fear to make his mother weep when she heard what had happened, enough fear to believe that law enforcement in the country are completely out of control but perhaps not the kind of fear that Defendant wanted to see.

### III. Response to "ARGUMENT AND AUTHORITY"

Response to ¶¶ 36 - 46: Defendant Corkern was personally involved in the planning of the arrest of Plaintiff which was an unlawful arrest without probable cause.

Defendant was personally involved in pointing a gun at Plaintiff without an obvious and reasonable suspicion that Plaintiff had committed a crime. Defendant's irrebuttable legal presumption with no substantive facts or evidence in support that Plaintiff was engaged in the regulatable activity of transportation which is to say he is ignoring the primary element of a Trans. Code violation which is one must be engaged in commerce or a for hire capacity, is no fault of Plaintiff and Plaintiff may not be held liable for Defendant's wantonly aggressive behavior in looking for a reason to justify his aggression toward Plaintiff which consisted of holding Plaintiff at gun point prior to Dunn's arrest of Plaintiff and creating an arrest of Plaintiff in and of itself.

Defendant actively planned the unlawful arrest of Plaintiff making him a dual decision maker

5

for the arrest of Plaintiff with Dunn and others, how and where and what to use and how to use it to shatter Plaintiff's car window and where stand and how to stand to have the most impact on Plaintiff and actually arrested Plaintiff aka personal involvement with his acts of pointing a gun at Plaintiff effectively telling Plaintiff your are under my control and you will not leave prior to the act of Dunn giving Plaintiff notice he was under arrest.

Defendant was no "mere bystander with respect to the decision to arrest" because Defendant effectively arrested Plaintiff by his intentional presence and stance in Plaintiff's view pointing a gun at him which Plaintiff perceived to be a dire threat to his life and liberty.

Defendant's *causal connection* is his planning to arrest Plaintiff with Dunn and the fact that Dunn either would not or could not have done the arrest without Defendant's actions with the long gun and his aid in planning.

Defendant's defenses fail because Corkern gave aid and support that was so intertwined that Dunn could not have made the arrest of Plaintiff without them.

### IV.     Response to "FALSE ARREST and EXCESSIVE FORCE" defense

Defendant effectively arrested Plaintiff prior to Dunn as evidenced by Dunn's cruiser recording and Plaintiff's Fifth Amended Complaint. "The plaintiff must demonstrate an officer's "overt personal participation" in the violation of his own rights, not someone else's. *Id*. There is no allegation that Officer Prejean gave any command, signal, or any other form of direction to the officers that prompted them to arrest and subdue Mesa." Mesa v. Prejean, 543 F. 3d 264 - Court of Appeals, 5th Circuit 2008.

Defendant is so intertwined with Dunn that he was in on the planning stage of "extracting" Plaintiff from his car to effect the arrest. Dunn's cruiser video is very clear in this regard. Defendant colluded mentally as is heard on Dunn's cruiser recording and acted physically in unison with Dunn.

Plaintiff is unaware of people who stand around a police action with guns draw and considered

6

not involved in that police action.

A law enforcement officer with his gun in his hand is most definitely looking to shoot somebody for a suspected violation of something or other perhaps for the high crime of an ***alleged*** seat belt violation. The totality of the incidence giving rise to the claim that must be considered.

> Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007) at 417 , ("[I]n a case where police effect an arrest without probable cause ... but use no more force than would have been reasonably necessary if the arrest or detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force."); Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1332 (11th Cir.2006) ("When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest."); cf. Bodine v. Warwick, 72 F.3d 393, 400 n. 10 (3d Cir.1995) ("Officers who detain a suspect unlawfully should be liable for the harm proximately caused by their tortious detention, but this will not necessarily include all harm resulting from the otherwise reasonable use of force to carry out the detention.")

Plaintiff's facts and Dunn's cruiser recording clearly demonstrate that their was no probable cause. Defendant is continuing to ignore the lack of the primary element of the allegation of a Trans. Code violation.

WASHINGTON v. Bob Grant No. 94–56685 9th Circuit (1996)

> In looking at the totality of the circumstances, we consider both the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was restricted, United States v. Robertson, 833 F.2d 777, 780 (9th Cir.1987) ("Whether an arrest has occurred depends on all the surrounding circumstances, including the extent to which liberty of movement is curtailed and the type of force or authority employed."), and the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken.   E.g., United States v. Jacobs, 715 F.2d 1343, 1345–46 (9th Cir.1983) (per curiam).   In short, we decide whether the police action constitutes a Terry stop or an arrest by evaluating not only how intrusive the stop was, but also whether the methods used were reasonable given the specific circumstances.   See Del Vizo, 918 F.2d at 824–25.   As a result, we have held that while certain police actions constitute an arrest in certain circumstances, e.g., where the "suspects" are cooperative, those same actions may not constitute an arrest where the suspect is uncooperative or the police have specific reasons to believe that a serious threat to the safety of the officers exists.   "The relevant inquiry is always one of reasonableness under the circumstances."   Allen v. City of Los Angeles, 66 F.3d 1052, 1057 (9th Cir.1995) (quoting

United States v. Sanders, 994 F.2d 200, 206 (5th Cir.), cert. denied, 510 U.S. 1014, 114 S.Ct. 608, 126 L.Ed.2d 572 (1993)).

11. The duration of the detention may also be a factor to consider. The Seventh and Eighth Circuits have stated that the court should consider both the duration of the stop and the "degree of fear and humiliation that the police conduct engenders." United States v. Lego, 855 F.2d 542, 544–45 (8th Cir.1988) (citing United States v. Serna–Barreto, 842 F.2d 965, 967 (7th Cir.1988)).Although the length of detention is relevant in some cases, in others the police tactics may be sufficiently aggressive and intrusive that even a brief stop is sufficient to constitute an arrest. Cf. United States v. Delgadillo–Velasquez, 856 F.2d 1292 (9th Cir.1988) (holding that the stop constituted an arrest because "[t]he show of force and detention techniques used in this context are indistinguishable from police conduct in an arrest.").

"Texas law permits the arrest of an individual for even the most minor criminal offenses. Boyd v. State, 217 S.W.3d 37, 43 (Tex. App. - Eastland 2006, pet. Refd)" In the present case there was **no** criminal offense which is exactly what Admin. Rule 1.2 says and no probable cause existed. Dunn was given notice. Corkern following the directives of Dunn and acts on his own without accepting the totality of the circumstances which did not warrant a police action is liable to Plaintiff for injures done.

Defendant in ¶ 49 state "Dunn then transported Plaintiff to the County Jail and charged Plaintiff for failure to identify, which is a violation of not only Tex. Penal Code §38.02(a), but also Tex. Trans. Code § 521.025. Id., and ^ 31-49. Plaintiff **also** could have been cited and charged with the seat belt violation." Plaintiff was not lawfully cited for failure to identify. See Docs. 34, 61 and 78.

Defendant's defense is his mistaken belief that the Trans. Code applies to everyone everywhere and all the time making arrest for trivial matters such as a improperly worn seat belt an arresstable

criminal act. Plaintiff disagrees that the private citizen is subject to the Trans. Code and submits that such fact is self evident in the law which created the Trans. Code.

Trans. Code is the regulatory arm of the Department of Public Safety found in Texas Administrative Code Title 37 Part 1 Ch 1 Subchapter A Rule §1.2.2 (herein "Rule 1.2.2"). The Trans. Code is a code of limited enforcement which unlike the Penal Code specifically sets out within the code itself who is given authority to enforce the Code. Furthermore, the DPS's Mission Statement Rule 1.2.2 in recognizing "commercial and for hire traffic" would of necessity have to recognize non-commercial traffic and it does in Rule 1.2.1.

The controlling law for the Trans. Code is Texas Administrative Code Title 37 Part 1 Ch 1 Subchapter A Rule §1.2 Mission (herein "Admin. Code Rule 1.2")

> The mission of the Texas Department of Public Safety is:
> (1) to supervise traffic on rural highways;
> (2) to supervise and regulate commercial and "for hire" traffic;
> (3) to preserve the peace, to investigate crimes, and to arrest criminals;
> (4) to administer regulatory programs in driver licensing, motor vehicle inspection, and safety responsibility; and
> (5) to execute programs supplementing and supporting the preceding activities.

The Texas Administrative Code continues to provide further evidence that the Coded is a code of limited enforcement and does not regulate the people in their private lives is Rule 1.11, in pertinent part:

> Title 37 Public Safety and Corrections Part 1 Texas Department of Public Safety Chapter 1 Organization and Administration Subchapter B Basic Doctrine Rule §1.11 Basic Doctrines (herein "Rule 1.11").
>
> (c) ***The department recognizes that government exists for the benefit of the governed-the people.*** Enforcement and regulatory actions against persons are carried out for the benefit of society as a whole. The department does not act to adjudicate or rectify injustices, inequities, or wrongs between individuals, but acts only to maintain order for the preservation and protection of society as a whole.
>
> (d) <u>**It is a solemn obligation of members of the department to uphold the constitutions of the United States and the State of Texas**</u> *as well as to enforce the statutory enactments.*

9

> **Constitutional provisions take precedence over statutory enactments.** In the enforcement of the provisions of a statute, personnel of *the department of public safety will refrain from infringing upon any rights or privileges guaranteed by the constitutions*.
>
> (f) **It is the policy of the department to assume primary responsibility for** traffic supervision on the rural highways of this state, including the ***regulation* of commercial traffic**.

Certainly "supervision" would be along the lines of "Bridge Out Ahead" or "Caution Bridge Ices Before Road". While on the regulatory side would be the enforcement of commercial traffic carrying only weights within their weight range or regulating how many people can fit on a bus and arrest for sear belt violations.

Defendant quotes several Trans. Code sections without acknowledging that the Trans. Code is the regulatory are of the DPS's mission to "to supervise and regulate commercial and "for hire" traffic" as stated in Rule 1.2.2 above.

At no time did Plaintiff "refuse" to do anything to which he was lawfully responsible to do. Plaintiff can not be said to "refuse" to do a thing to which Plaintiff is not liable to do. When Plaintiff was eventually arrested albeit for an non-arrestable charge after 40 odd minutes of nothing less than harassment by law enforcement for merely invoking his rights in part by giving Dunn notice of his non-commercial status, Plaintiff complied.

The Court now has irrefutable proof, that the Trans. Code is a code of limited enforcement and that have not presented the Court with any elements of a Trans. Code violation by Plaintiff.

Taking well established Texas law into account Plaintiff has violated no laws. Therefore, Plaintiff's unlawful arrest claims against Corkern must prevail as a matter of law.

## VI. Response to "QUALIFIED IMMUNITY" defense

Defendant a Newton City Police officer left his duties in Newton City and traveled outside his jurisdictional limits thereby placing Defendant outside the scope of his duties as a Newton City Police

Officer and was unreasonable. Defendant Corkern acted outside his scope of duty and jurisdiction was unreasonable in pointing a deadly weapon at a known unarmed citizen that he had not witnessed any criminal action from. Defendant was not informed of any cognizable criminal violation as he says he was told Plaintiff would not exit his car nor identify himself neither of which are criminal acts and Defendant was aware at the time of his arrival to the place where Plaintiff was being prevented from leaving that Plaintiff had not been lawfully arrested.

Defendant's acts were direct acts towards Plaintiff though Defendant had not reasonable grounds to perpetrate any acts on Plaintiff.

Texas Admin. Code Rule 1.2 is clearly established law and because there was no probable cause without the Trans. Code a code of limited enforcement Defendant's acts of arresting Plaintiff's before Dunn arrested Plaintiff and his acts in planning and his intertwined acts while Dunn shattered Plaintiff's car window was objectively unreasonable.

Defendant may have killed Plaintiff by his very acts he could have literally given Plaintiff a heart attack and the risk does not outweigh the unreasonableness of Defendant who traveled outside of his jurisdiction to point a gun at an unarmed citizen making not threats and only protecting his rights which were noticed to the initiating officer and Defendants as law enforcement was responsible for making his own decisions.

Defendant is constitutionally required to not interfere with the rights of the citizenry by not violating his oath of office.

### VII. Response to "STATE LAW" defense

Defendant's acts were not in the course of duty. Plaintiff was never uncooperative, and there was no objectively reasonable cause to adequately view the rear interior of Plaintiff's car which had curtains on the windows.

Defendant alleges as his defense that he had the right to take precautions to protect Dunn however in protecting Dunn from an imaginary threat Plaintiff had a deadly weapon pointed at him long enough to empty the weapons magazine which was a very real threat to Plaintiff and one which was based on the unreasonableness of Defendant considering the totality of the circumstances at the time and caused emotional distress to Plaintiff that shocks the conscious of a civilized society.

### VII. Response to "OFFICIAL IMMUNITY" defense

As outlined throughout and in Plaintiff's Fifth Amened Complaint Defendant's acts were not carried out in "good faith' but in the faith that Defendant could do no wrong and would be protected for whatever he did. Defendant was in uniform and on duty in another jurisdiction and his very act of traveling outside his jurisdiction when he knew other officers with jurisdiction were on the scene or on there way to the scene was a show of bad faith. Also, Defendant's Supplemental Report made Plaintiff's Exhibit 11, demonstrates Defendant's bad faith "Trooper Dunn also advised that he was out with a "Republic of Texas" type individual who would not provide identification. It is common knowledge to myself that these individuals hold beliefs that contradict certain aspects of state and federal law. I have previous experience of contact with individuals of these beliefs while on duty in a law enforcement capacity." and "The driver had lowered his window approximately two inches to verbally converse with Trooper Dunn. I could not hear the conversation. The driver appeared to be calm and deliberately not using any body language during this conversation, keeping his hands to his sides in plain view."

Defendant Corkern had an agenda when he heard "Republic of Texas" type individual. Defendant was also the only officer that actually pointed a gun at Plaintiff as far as he knows. Defendant left his jurisdiction to attend what can only be reasoned as his anticipation of a standoff with his enemy a "Republic of Texas" type individual. Defendant apparently recognized the error before he

actually used his gun.

Plaintiff's 'compliance' appeared the moment he was arrested albeit an unlawful arrest.

## CONCLUSION

Plaintiff has in this response and other pleading stated sufficient facts supported by statute and case law to maintain his claims on Defendant Corkern. And, until discovery is completed Plaintiff does not know the exact extent to which Defendant Corkern did the actual planning with Dunn and others. Any deficits in Plaintiff's pleadings may be remedied with amendment.

**WHEREFORE**, Plaintiff, Ralph Lynn Ferguson, Jr. respectfully requests that this court recognize Plaintiff's responses as adequate and sufficient to deny in its entirety Defendant Timothy Wayne Corkern's 12(b)6) Motion to Dismiss Plaintiff's Fifth Amended Complaint.

Respectfully submitted,

By: *Ralph Lynn Ferguson Jr.*
Ralph Lynn Ferguson, Jr. Pro se
1192 Highway 27
DeRidder, Louisiana 70634
ralphsemail@hushmail.com
Phone:   337.462.2615
Fax:       337.462.0541

## CERTIFICATE OF SERVICE

I certify that on November 13, 2017, a copy Plaintiff's Response to Defendant Timothy Wayne Corkern's 12(b)6) Motion to Dismiss Plaintiff's Fifth Amended Complaint Doc. 125 was served on the following via USPS.

Larry James Simmons , Jr.
Germer, PLLC -Houston
2929 Allen Parkway
St. 2900
Houston, TX 77019

Sarah Crystal Dionne
(at the above address)

James Allen Payne, Jr.
Fairchild Price Thomas Haley – Center
P.O. Box 1719
Center, Texas 75935-1719

Christopher Lee Lindsey
Office of the Attorney General – Defense Div
300 W 15th Street
7th Floor
Austin, TX 78701

Pete Patrick
807 N. Margaret
Kirbyville, Texas 75956

Frank D. Calvert
2615 Calder Avenue, Suite 1070
Beaumont, Texas 77702

F Blair Clarke
(at above address)

And a complimentary copy of the style page and certificate of service page to the following.
Parvin Butler
P.O. Box 830
Newton, Texas 75966

Angie Brown
230 County Road 401
Kirbyville, Texas 75956

_Ralph Lynn Ferguson Jr._
Ralph Lynn Ferguson, Jr.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| Ralph Lynn Ferguson, Jr, | § § | |
| v. | § § | CIVIL ACTION NO. 1:16cv272 |
| ERIC MARCINE DUNN ET AL | § § § | JURY REQUESTED |

## ORDER

On this date came on to be heard, DEFENDANT TIMOTHY WAYNE CORKERN'S 12(b)6) MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT (Doc. 123), SUBJECT TO DEFENDANT'S MOTION TO STRIKE SAME. After considering the motion, any response or any arguments of counsel or pro se parties, and the evidence, the Court is of the opinion that DEFENDANT TIMOTHY WAYNE CORKERN'S 12(b)6) MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT (Doc. 123), SUBJECT TO DEFENDANT'S MOTION TO STRIKE SAME should be **DENIED** in its entirety.

It is therefore, **ORDERED, ADJUDGED** and **DECREED** that DEFENDANT TIMOTHY WAYNE CORKERN'S 12(b)6) MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT (Doc. 123), SUBJECT TO DEFENDANT'S MOTION TO STRIKE SAME be **DENIED**.