IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

RALPH LYNN FERGUSON, JR.,

                  Plaintiff,

vs.                                                                      NO. 1:16-CV-00272

ERIC MARCINE DUNN, et al.,

               Defendants.

## REPORT AND RECOMMENDATION GRANTING MOTIONS TO DISMISS IN PART

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and

referred to the undersigned United States Magistrate Judge for pretrial management, pursuant to

General Order 05-07.  Five motion to dismiss are pending before the court:

- Defendant Timothy Wayne Corkern's "12(b)(6) Motion to Dismiss" (Doc. No. 125)
- Defendant J. Keith Stanley's "Third Motion to Dismiss" (Doc. No. 129)
- Defendants Eric Dunn and Steve Holloway's "Fourth Motion to Dismiss" (Doc. No. 130)
- Defendants Charles Willis, Josh Beckman, Brandon Thurman, Gwen Kelley, Judge Connie Smith, Linda Pitts, Ashley Morrow, Robert Shane Hilton, Courtney Tracy Ponthier, and Judge Craig Mixson's "Motion to Dismiss" (Doc. No. 131)
- Defendants Pete Patrick, Angie Brown, and Parvin Butler's (Patrick Auto Defendants) "Sixth Motion to Dismiss" (Doc. No. 132)

*Pro se* Plaintiff, Ralph Lynn Ferguson, Jr. (Ferguson), filed a response to each motion.  *See* Doc.

Nos. 136–40.

## I.  Background

Ferguson is a resident of DeRidder, Louisiana.  Doc. No. 123, at 5.  On August 5, 2014,

Ferguson was driving in Newton County, Texas, when he was stopped by Texas Department of

Public Safety (DPS) Trooper Eric Dunn for allegedly failing to wear his seatbelt properly.  *Id.* at

8; Doc. No. 92, Ex. 6, Disc 1 ("Disc 1"), at 3:21–3:30.[1]  Dunn asked Ferguson to identify himself (Doc. No. 123, at 9) and produce his driver's license at least three times during the stop, but Ferguson was unwilling to do so.  Disc 1, at 3:44–3:50, 4:18–4:26, and 5:16–6:00.  Ferguson told Dunn that he "was not engaged in Commerce or Transportation."  Doc. No. 123, at 8.  Dunn eventually radioed for the aid of other law enforcement officers, and Newton County Sheriff's Office Deputies Charles Willis, Josh Beckman, Brandon Thurman, Timothy Corkern, and Terrance Hawthorne (non-party) arrived in response.  *Id.* at 9.  During the stop, Ferguson was "informed [] he was not free to leave."  *Id.*

For approximately forty minutes after Dunn made his initial stop of Ferguson, Dunn attempted to persuade Ferguson to exit his vehicle.  *See generally* Disc 1, at 3:00–45:00.  Dunn informed Ferguson that if he did not identify himself, then Dunn would arrest Ferguson for not wearing his seatbelt and not identifying himself.  *Id.* at 20:00–20:24, 30:45–31:02.  Dunn communicated with his supervisor, Steve Holloway, about arresting Ferguson before doing so.  Doc. No. 123, at 10.

When Dunn physically arrested Ferguson, "Dunn broke [Ferguson's] car window glass" with a spring-loaded punch device "and caused [Ferguson's] left forearm to bleed."  *Id.*; Disc 1, at 43:30–44:00.  Dunn informed Ferguson he was under arrest for "failure to identify" himself.  Disc

---

[1] Disc 1 was originally filed as an attachment to Ferguson's Second Amended Complaint (Doc. No. 92, Ex. 6), and Ferguson's Fifth Amended Complaint specifically incorporates Disc 1 by reference.  Doc. No. 123, at 9.  The court may consider Disc 1 as part of the complaint itself.  *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *General Electric Capital Corp. v. Posey*, 415 F.3d 391 n.8 (5th Cir. 2005) ("Documents attached to a complaint are considered part of the plaintiff's pleadings."); 5 Charles A. Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 1327 (3d ed.) ("By attaching an exhibit, the pleader often may foreclose recovery on a theory of relief . . . since the document itself may reveal the existence of an insurmountable defense."); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (effectively holding a video attached to a complaint was a "written instrument" under FED. R. CIV. P.  10(c)); *Estate of Ronquillo by & through Estate of Sanchez v. City & City of Denver*, No. 16-1476, 2017 WL 6422342, at *2 (10th Cir. Dec. 18, 2017) ("[W]e accept as true Plaintiff's allegations" when deciding a motion to dismiss except when contradicted "by the attached exhibits—in this case the video of the incident.") (citation omitted).

1, at 43:57–44:20.  Corkern assisted in the arrest by pointing a rifle at Ferguson for less than one minute.  *See* Doc. No. 123, at 10, 16; Disc 1, at 43:57–44:39 (video showing maximum amount of time rifle may have been pointed at Ferguson).  Beckman, Willis, and Thurman assisted in the arrest with their pistols unholstered.  Doc. No. 123, at 10.  Dunn handcuffed Ferguson and "strapped [Ferguson] into his patrol cruiser causing [Ferguson] extreme physical pain."  *Id.*  While Ferguson was handcuffed in the police vehicle, Dunn searched Ferguson's car.  *Id.* at 11.  After the search, Dunn "gave" Ferguson's car to Parvin Butler of Patrick Auto to tow the car.  *Id.*  Dunn then took Ferguson to the Newton County Jail.  *Id.*

Gwen Kelley, the "head jailer," accepted physical custody of Ferguson and locked him inside.  *Id.*  On the same day, Judge Connie Smith signed an arrest warrant outside of Ferguson's presence "based on Dunn's criminal complaint."  *Id.*  Dunn's criminal complaint listed the offenses of (1) Failure to Identify, Tex. Penal Code § 38.02(a), a Class C misdemeanor and (2) Evading Arrest or Detention, Tex. Penal Code § 38.04(b)(1)(B), a state jail felony.  Doc. No. 92, Ex. 5.  Judge Smith set bail at $10,000, and Ferguson posted bail on the following day, August 6, 2014.  Doc. No. 123, at 11; Doc. No. 92, Ex. 13.    Ferguson then paid $241.60 to Angie Brown, an employee of Patrick Auto, for towing and related fees in order for his car to be released.  Doc. No. 123, at 12.  Pete Patrick is the owner of Patrick Auto Supply.  *Id.* at 11.

At some point, Ferguson filed a public information request for a copy of the jail's security recordings, and Ashley Morrow, a "jailer" at the Newton County Jail, responded and provided a DVD.  *Id.* at 12.  Newton County Assistant Criminal District Attorney Robert Hilton, acting under the supervision of Criminal District Attorney Courtney Ponthier, was the prosecutor for Ferguson's failure to identity charge in the Justice of the Peace Court, Precinct 1, Newton County court (misdemeanor case).  *Id.*  On December 15, 2014, and March 31, 2015, Linda Pitts —as Clerk of

Court for the Justice of the Peace, Precinct 1, Newton County—informed Ferguson that his misdemeanor case file was not at her office, but it had been moved to the Newton County District Attorney's Office. *Id.* at 12–13.

On November 19, 2014, District Judge Craig Mixson, 1st Judicial District, appointed J. Keith Stanley as Ferguson's defense counsel in the misdemeanor case.  Doc. No. 123, at 12. Stanley contacted Ferguson for the first time on April 1, 2015, informing Ferguson that (1) the prosecutor had provided Stanley a copy of the misdemeanor criminal case, (2) he did not have a copy of "Dunn's cruiser recordings" during the arrest, (3) he did not have a copy of Ferguson's "pleadings" in the misdemeanor case, and (4) he would "file papers" in the misdemeanor case. *Id.* at.13  Ferguson expressed his "dire concerns" about the case, and Stanley informed him the case could take many years. *Id.* at 13–14.  Stanley also told Ferguson he would check into why Ferguson's case file was not on file with the Court Clerk. *Id.* at 14.  Between November 19, 2014, and July 17, 2015, Stanley filed no pleadings in Ferguson's misdemeanor case. *Id.*

On or about July 9, 2015, Stanley filed a motion to withdraw as Ferguson's attorney, and a hearing was held on the motion on July 17, 2015. *Id.*  Although it is not entirely clear in what capacity Stanley was appointed, Stanley said during the hearing that "he was not Plaintiff's counsel in [the misdemeanor case]," while Ponthier "stated Mr. Stanley agreed to represent Plaintiff. *Id.* Ponthier also stated that "Stanley was appointed to have somebody speak on [Ferguson's] behalf to see if [the misdemeanor case] and the pending felony evading charge 'needed to be thrown out altogether or investigated further or a plea offer needed to be made,'" and also mentioned the "felony charge [] was somewhat questionable." *Id.*  Judge Mixson granted Stanley's motion to withdraw on July 17, 2015. *Id.*  On July 23, 2015, Hilton informed Ferguson that the grand jury declined to return an indictment for the state felony charge of evading arrest. *Id.* at 14–15.  The

prosecutor also declined to pursue the misdemeanor case, dismissing the Failure to Identify charge. *Id.* at 15.

## II.  Legal Standard

Four of the five pending motions to dismiss argue that Ferguson's claims should be dismissed under FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim for which relief can be granted.  When considering a motion to dismiss, all facts alleged in the complaint must be accepted as true, those facts must be construed in a light most favorable to the non-movant, and all reasonable inferences must be drawn in favor of the non-movant. *Morgan v. Swanson*, 659 F.3d 359, 396 (5th Cir. 2011) (citing *Brown v. Nationsbank Corp.*, 188 F.3d 579, 585–86 (5th Cir. 1999)).  A court should grant a motion to dismiss only when the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Similarly, a plaintiff must offer more than "unadorned, the defendant-unlawfully-harmed-me accusation[s]." *Id.*  Because Ferguson is proceeding *pro se*, his pleadings are necessarily held to "less stringent standards than formal pleadings drafted by lawyers," and, as such, must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002).

When evaluating claims for relief involving alleged constitutional violations, § 1983 provides a cause of action against any person acting under color of state law who deprives another person of rights secured by the Constitution and laws of the United States.  42 U.S.C. § 1983.  To

state a claim for relief under § 1983, "a plaintiff must (1) allege a violation of a right secured by

the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th

Cir. 2013).

## III.  Analysis

Ferguson's operative complaint contains a broad recitation of facts surrounding his

detention, arrest, search, seizure, and subsequent process in the Newton County legal system.

Ferguson alleges federal claims under § 1983 and state law tort claims against the various

Defendants.  To simplify the analysis, claims against certain groups of Defendants will be analyzed

together, while claims against other Defendants will be analyzed individually.

In response to the various motions to dismiss, Ferguson frequently argues that private

citizens (like himself) are not subject to the DPS's enforcement of the Texas Transportation Code

because of the inherent limits set out in the DPS's mission articulated in the Texas Administrative

Code:

> The mission of the Texas Department of Public Safety is:
> (1)  to supervise traffic on rural highways;
> (2)  to supervise and regulate commercial and "for hire" traffic;
> (3)  to preserve the peace, to investigate crimes, and to arrest criminals;
> (4)  to administer regulatory programs in driver licensing, motor vehicle inspection, and safety responsibility; and
> (5)  to execute programs supplementing and supporting the preceding activities.

37 Tex. Admin. Code § 1.2.  Relying on his narrow interpretation of the word "regulate" in the

second mission directive, Ferguson concludes that he cannot be "regulated" because he is not a

commercial or for-hire driver.  *See, e.g.*, Doc. No. 140, at 9.  For example, Ferguson believes he

is not subject to seatbelt laws because he is not a commercial or for-hire driver.  *Id.* at 10.  This

argument is wholly unavailing.  Ferguson may be correct that he was not acting as a "commercial"

or "for-hire" driver subject to the regulations applicable to commercial traffic on the day of his arrest, but the DPS has broader authority than just regulating commercial traffic.  DPS officers routinely supervise traffic on rural highways, detain private citizens for traffic violations, and make arrests for traffic violations or other legal violations.  In fact, mission directives (1), (3), and perhaps (5) support the authority of DPS to enforce Texas laws, even against non-commercial, private citizens.  Tex. Code Crim. P. Art. 2.12(4) lists officers commissioned by the DPS Director as "peace officers."  Tex. Code Crim. P. Art. 2.13 lists the duties and powers of peace officers, including the duty to "arrest offenders without warrant in every case where the officer is authorized by law . . . ."  *Id.* Art. 2.13(b)(4).  Like all other private citizens, Ferguson *is* subject to certain portions of the Texas Transportation Code when he is driving, and the DPS has authority to arrest him for certain legal violations.

### A.      DPS Trooper Eric Dunn

Troopers Dunn and Holloway filed a motion to dismiss Ferguson's claims against both of them under FED. R. CIV. P. 12(c), a motion for "judgment on the pleadings."  Doc. No. 130.  The standard for dismissal under Rule 12(c) is the same as the standard under FED. R. CIV. P. 12(b)(6).  *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).  Dunn and Holloway will be analyzed separately.

Ferguson alleges the following causes of action against Dunn:

(1)   Unlawful arrest in violation of the Fourth Amendment;
(2)   Unlawful seizure of vehicle in violation of the Fourth Amendment;
(3)   Unlawful search of vehicle in violation of the Fourth Amendment;
(4)   Due process violations protected by the Fourteenth Amendment; and
(5)   Excessive bail in violation of the Eighth Amendment.

Doc. No. 23, at 15–23.  Though Ferguson has alleged excessive force claims against other officers at the scene, he has not alleged an excessive force claim against Dunn.  Ferguson's five claims

against Dunn will be addressed below.

       1.     *Fourth Amendment Unlawful Arrest Claim*

Ferguson has not alleged that his initial detention by Dunn—being pulled over for a seatbelt infraction (Doc. No. 123, at 8)—violated the Fourth Amendment.  However, Ferguson has argued his warrantless arrest violated the Fourth Amendment because it lacked probable cause.  *Id.* at 16.  The Fourth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.  Under the Fourth Amendment, individuals have a clearly established constitutional right to be free from warrantless arrest absent probable cause.  *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).  Thus, Ferguson's arrest was lawful only if Dunn had probable cause to arrest him.

In Dunn's pending motion to dismiss Ferguson's Fifth Amended Complaint, Dunn concedes that the two reasons stated in his probable cause affidavit—Failure to Identify and Evasion of Arrest or Detention—were not lawful reasons to arrest Ferguson, but Dunn argues independent probable cause existed because Ferguson did not produce a valid driver's license at Dunn's request during the stop.  Doc. No. 130, at 3–4 (citing Tex. Transp. Code §§ 521.0211, 521.025(a)–(c)).  Dunn asked Ferguson to produce his driver's license at least three times during the stop, but Ferguson refused to display the license.  *See* Disc 1, at 3:44–3:50, 4:18–4:26, and 5:16–6:00.

Dunn had probable cause to arrest Ferguson when he refused to provide his driver's license. Tex. Transp. Code § 521.025 requires drivers to possess a license and display it on demand to

peace officers.[2]  Violating § 521.025 is grounds for an arrest.  Tex. Transp. Code § 543.001 ("Any peace officer may arrest without warrant a person found committing a violation of this subtitle."). When Ferguson did not produce his driver's license at Dunn's request, Dunn had probable cause to arrest him.  *See Marcopoulos v. State*, 538 S.W.3d 596, 599–600 (Tex. Crim. App. 2017) ("Probable cause exists where the facts and circumstances known to law enforcement officers are 'sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'");  *Dew v. State*, 214 S.W.3d 459, 462 (Tex. App.—Eastland 2005, no pet.) ("Because appellant committed a misdemeanor by driving without a driver's license, Officer Anaya had probable cause to arrest.").  Accordingly, because Ferguson violated Tex. Transp. Code § 521.025 and committed an arrestable offense when he refused to display his driver's license, Dunn had probable cause to arrest Ferguson for such a violation.[3]

Though Dunn wrongfully represented that he had probable cause to arrest Ferguson for Failure to Identify (instead of arresting Ferguson for failure to produce his driver's license), Dunn's mistake in arresting Ferguson for the wrong crime does not result in a Fourth Amendment violation.  An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."  *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).  Probable cause exists if an officer is "aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense.  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citing *Devenpeck,* 543

---

[2] "(a) A person required to hold a license under Section 521.021 shall: (1) have in the person's possession . . . the class of driver's license appropriate for the type of vehicle operated; and (2) display the license on the demand of a . . . peace officer."  Tex. Transp. Code § 521.025(a)(1)–(2).

[3] Dunn has unsuccessfully made this argument about independent probable cause before.  *See* Doc. No. 34, at 9–10.  The independent probable cause argument was previously rejected because Ferguson's First Amended Complaint did not concede that Ferguson refused to provide his driver's license.  Doc. No. 61, at 11 (report and recommendation); Doc. No. 78 at 5, 7 (order adopting).  Though Dunn's argument is the same here, the result is now different because Ferguson's Fifth Amended Complaint includes Disc 1, and Disc 1's video evidence shows that Dunn refused to provide his driver's license.

U.S. at 153–54); *see also Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 391 (5th Cir. 2017) ("[P]robable cause may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform an arrest.") (citing *Club Retro*, 568 F.3d at 204). Accordingly, Dunn's arrest of Ferguson was based on probable cause, and the arrest did not violate Ferguson's Fourth Amendment rights.  Ferguson's Fifth Amended Complaint, by its text and inclusion of attachments (especially Disc 1), now includes and alleges all the facts necessary to reach this conclusion, even when all reasonable inferences are drawn in Ferguson's favor.  Thus, Ferguson has failed to state an unlawful arrest claim under the Fourth Amendment for which relief can be granted, and his claim should be dismissed.

> a.    *Qualified Immunity*

Though it is likely that Dunn enjoys qualified immunity from all of Ferguson's claims, Dunn has not consistently asserted qualified immunity in his various motions to dismiss, and it is not clear that Dunn currently argues he is entitled to such immunity.  Dunn's First Motion to Dismiss specifically argued Dunn was entitled to qualified immunity (Doc. No. 34, at 3), but his Second Motion to Dismiss (Doc. No. 110) and Third Motion to Dismiss (Doc. No. 122) do not specifically assert qualified immunity.  Dunn's Original Answer to Ferguson's Second Amended Complaint asserted qualified immunity (Doc. No. 101, ¶ 17), as did Dunn's Amended Answer to Ferguson's Third Amended Complaint.  Doc. No. 111, ¶ 17.  However, Dunn has not filed an answer to Ferguson's Fifth Amended Complaint to reassert qualified immunity.

In Dunn's Fourth Motion to Dismiss (the pending motion), he has not explicitly argued he is entitled to qualified immunity, though he does attempt to "reference, incorporate and reiterate [the] previous motions to dismiss for the purposes of judicial economy and efficiency."  Doc. No. 130, at 2.  In his response to Dunn's pending motion to dismiss, Ferguson noted that he did not

understand what Dunn meant by attempting to "incorporate" the prior arguments into the motion. Doc. No. 138, at 2.  Dunn did not reply to Ferguson's response (*id.*) to clarify which aspects of their prior motions he wanted to incorporate.  Dunn's motion to dismiss may have implicitly argued he has qualified immunity by asserting that "Plaintiff's arrest was objectively reasonable under the Fourth Amendment, and therefore Plaintiff suffered no violation of his rights" (Doc. No. 130, at 3), but this sentence alone does not make his argument clear enough to put Ferguson (a *pro se* plaintiff) on notice that Dunn is invoking qualified immunity.

Dunn's attempt to "incorporate" prior arguments from his previous motions to dismiss fails because it does not put Ferguson on notice of what particular arguments Dunn is asserting in his pending motion to dismiss.  Additionally, the Local Rules require dispositive motions (including motions to dismiss) to be thirty pages or less, absent leave of court.  E.D. Tex. Civ. R. CV-7(a)(1). If the arguments from all of Dunn's prior motions to dismiss were "incorporated" into the pending motion, then the motion would impermissibly exceed the page limitation.  Though Dunn likely enjoys qualified immunity from all of Ferguson's claims, the analysis below will proceed without such an analysis because of Dunn's failure to articulate this argument in his pending motion to dismiss.

> 2.   *Fourth Amendment Unlawful Seizure of Vehicle Claim*

Ferguson argues the seizure of his vehicle was unlawful because (1) the vehicle was seized "without probable cause" and (2) the seizure "was based on an unlawful arrest . . . lacking probable cause."  Doc No. 123, at 21.  Ferguson's second argument fails because, as analyzed above, the arrest was lawful, but the first argument is not automatically deficient.  Aside from his general argument that Ferguson does not have cognizable constitutional claims because Ferguson's arrest was lawful (Doc. No. 130, at 5), Dunn's pending motion to dismiss does not make any argument

concerning Ferguson's Fourth Amendment unlawful seizure claim, nor do the prior motions to dismiss. *See* Doc. Nos. 34, 110, and 122. A lawful arrest can still be accompanied by an unlawful seizure that violates the Fourth Amendment.

After an arrest, officers *may* impound an arrestee's vehicle in some circumstances, but that does not mean all vehicles seized after arrest are seized lawfully. "[T]he public caretaking exception to the warrant requirement allows police to impound [a vehicle after a driver's arrest] to protect the vehicle, its contents, and the surrounding roadways." *Trent v. Wade*, 776 F.3d 368, 387 n.13 (5th Cir. 2015). Officers may impound vehicles in furtherance of public safety and community caretaking functions. *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976). Officers may impound vehicles when they have probable cause to do so. *See Roberts v. State*, 444 S.W.3d 770, 776–78 (Tex. App.—Fort Worth 2014, pet. denied) (holding driver's failure to show proof of financial responsibility for a vehicle provided probable cause to impound the vehicle). Dunn has not argued the vehicle was impounded to protect the vehicle, its contents, the nearby roadway, nor any other community caretaking or safety functions. Taking the allegations in Ferguson's complaint as true, Dunn has not argued that he had probable cause to impound the vehicle based on Ferguson's violations of the law. Without an argument from Dunn about *why* seizing Ferguson's vehicle was lawful, the court is only left with Ferguson's allegations that the seizure was unlawful because it lacked probable cause. Accordingly, Ferguson has stated a plausible Fourth Amendment claim for unlawful seizure of his vehicle, and this claim should not be dismissed.

   3.   *Fourth Amendment Unlawful Search of Vehicle Claim*

Ferguson argues the search of his vehicle was unlawful because Dunn lacked "articulable suspicion, probable cause, or a warrant or consent." Doc No. 123, at 20. Warrantless searches

without probable cause presumptively violate the Fourth Amendment unless an exception to the probable cause and warrant requirements exists, including "investigatory detentions, searches incident to a valid arrest, seizure of items in plain view, exigent circumstances, consent searches, vehicle searches, container searches, and searches in which the special needs of law enforcement make the probable cause requirement impracticable." *Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1093 (5th Cir. 1997).  There are at least two arguments available to Dunn to argue his search was lawful:  a "search incident to a lawful arrest,"[4] and a lawful "inventory search."[5]  Aside from his general argument that Ferguson does not have cognizable constitutional claims because Ferguson's arrest was lawful (Doc. No. 130, at 5), Dunn's pending motion to dismiss does not make any argument concerning Ferguson's Fourth Amendment unlawful search claim, nor do the prior motions to dismiss.  *See* Doc. Nos. 34, 110, and 122.  Disc 1's video and audio evidence of Dunn's clear intentions to perform a "vehicle inventory" search during the stop[6] is not dispositive because Dunn has not indicated in his motion to dismiss—even taking Ferguson's allegations in the operative complaint as true—how his search was a lawful vehicle inventory that complied with standardized regulations and procedures.  *See McKinnon*, 681 F.3d 203, 209–10.  Because Dunn has not addressed how the search was lawful in his motion to dismiss, the undersigned cannot determine that Ferguson has failed to state a claim for which relief can be granted for his Fourth

---

[4] A search incident to a lawful arrest occurs when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343 (2009).

[5] Officers can perform reasonable "inventory searches" of impounded vehicles that do not violate the Fourth Amendment in certain circumstances:

> [If the inventory search] is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger.  These standardized regulations and procedures must sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches.

*United States v. McKinnon*, 681 F.3d 203, 209–10 (5th Cir. 2012) (internal citations and quotations omitted).

[6] *See* Disc 1, at 50:30–51:01, 51:36–52:10 (Dunn informs other officers he will conduct vehicle inventory search); *see also id.* at 56:05–1:19:44 (Dunn describes the property as he discovers it in the vehicle).

Amendment unlawful search claim, and this claim should not be dismissed.

4.    *Fourteenth Amendment Due Process Claim*

The Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1.  Ferguson argues that his Fourteenth Amendment right to procedural due process was violated when Dunn transported him to jail prior to taking him before Judge Smith.  Doc. No. 123, at 22.  Specifically, Ferguson argues that Tex. Code Crim. P. Art. 15.17's "unnecessary delay" provision was violated when he was not taken to a judge first, and this constitutes a procedural due process violation.  Doc. No. 123, at 22. Ferguson appeared before Judge Smith on the same day as his arrest.  *Id.* at 11.  As a matter of law, taking Ferguson to the jail before presenting him to the judge later the same day does not constitute "unnecessary delay" under Tex. Code Crim. P.  Art. 15.17.  *See Moya v. State*, 426 S.W.3d 259, 264 (Tex. App.—Texarkana 2013, no pet.) (holding it was not unnecessary delay for defendant to first undergo medical treatment, a police interview, provide a written statement, be placed in a jail cell, and only then appear before the county magistrate); *Jenkins v. State*, 912 S.W.2d 793, 807 (Tex. Crim. App. 1993), on reh'g (Oct. 11, 1995) (holding a delay of sixteen hours between arrest and appearance before the county magistrate was not "unnecessary delay"). Because Ferguson has not alleged facts sufficient to show Art. 15.17 was violated, let alone a violation of his Fourteenth Amendment rights to due process, his Fourteenth Amendment claim fails to state a claim for which relief can be granted.

5.    *Eighth Amendment Excessive Bail Claim*

Ferguson alleges Dunn's Criminal Complaint lacked probable cause and included an intentionally false accusation that Ferguson committed the felony of Evading Arrest or Detention. Doc. No. 123, at 23.  "As a proximate result" of such conduct, Ferguson concludes Dunn violated

Ferguson's Eighth Amendment rights because his bail of $10,000 was excessive.  *Id.*  The Eighth Amendment states that "[e]xcessive bail shall not be required."   U.S. CONST. amend. VIII. Ferguson is a DPS Trooper, not a judge.  Troopers and police officers do not set bail amounts— judges set bail amounts.  Dunn cannot be liable for Ferguson's allegedly excessive bail if he did not set the bail.  *See Walker v. Hodge*, 4 F.3d 991 n.2 (5th Cir. 1993) ("Even if [Plaintiff] had raised on appeal the dismissal of his excessive bail claim, its dismissal . . . is not in error because he has failed to allege any specific act or conduct on the part of either of the defendants in this respect.  And, the sheriff does not fix bail."); *see also id.* (citing affirmatively *Potter v. Clark*, 497 F.2d 1206, 1208 (7th Cir. 1974) ("Plaintiff cannot be heard to bring an action against defendant for excessive bail since defendant was not the one who had responsibility to set the bail. The bail was set by a state court judge . . . .")).  Ferguson has not alleged any facts that can be construed as Dunn setting the bail amount, and his Eighth Amendment claim accordingly fails to state a claim against Dunn for which relief can be granted.

## B.    DPS Trooper and Supervisor Steve Holloway

Based on Holloway's supervision of Dunn during the arrest, Ferguson alleges the following causes of action against Holloway:

(1)   Unlawful arrest in violation of the Fourth Amendment; and
(2)   Unlawful search of vehicle in violation of the Fourth Amendment.

Doc. No. 123, at 16–20.  When alleging liability of a supervising officer under § 1983, the plaintiff must demonstrate "either '(1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Mesa v. Prejean*, 543 F.3d 264, 274 (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).   Supervisory liability requires an officer's "overt personal participation" in violating a plaintiff's constitutional rights.  *Id.*

1.      *Fourth Amendment Unlawful Arrest Claim*

Ferguson alleges that Holloway, as Dunn's supervisor, is liable for his unlawful arrest claim stemming from the arrest by Dunn.  As previously analyzed, Dunn had probable cause to arrest Ferguson, and the arrest was not unlawful.  Ferguson has failed to state a claim against Dunn for unlawful arrest for which relief can be granted, and his claim against Holloway fails for the same reason.

2.      *Fourth Amendment Unlawful Search of Vehicle Claim*

Ferguson alleges that Holloway communicated with Dunn during the vehicle search via mobile phone, and Holloway asked Dunn if he found any contraband during the search.  Doc. No. 123, at 19.  Ferguson infers from Holloway's conduct that he had "ulterior motives" for the arrest and search of the vehicle and exercised "indifference" toward Ferguson's constitutional rights.  *Id.*

Notably, Ferguson has not alleged any facts that show Holloway was personally involved or overtly participated in the search aside from the phone call.  Ferguson has not cited any authority suggesting that Holloway's question about contraband during the search constitutes participation in the search.  Additionally, the facts alleged do not amount to a sufficient causal connection between Holloway's conduct and the alleged constitutional deprivation.  Ferguson has not alleged that Holloway "gave any command, signal, or any other form of direction to" Dunn that "prompted" Dunn to unlawfully search the vehicle.  *Prejean*, 543 F.3d at 274.  Accordingly, Ferguson has failed to state a claim against Holloway for an unlawful search for which relief can be granted.

**C.      Newton Police Department Officer Timothy Corkern**

Based on Officer Corkern helping Dunn plan how to break the vehicle's window before the arrest and pointing a rifle at Ferguson during the arrest, Ferguson alleges the following causes

of action against Corkern:

    (1)   Unlawful arrest in violation of the Fourth Amendment;
    (2)   Excessive force in violation of the Fourth Amendment;
    (3)   State law intentional infliction of emotional distress; and
    (4)   State law assault.

Doc. No. 123, at 15–20, 23, 33–34.  Corkern argues Ferguson (1) has failed to allege any actionable Fourth Amendment claims, (2) alternatively he has qualified immunity from the Fourth Amendment claims, (3) the state law tort claims must fail because Ferguson has not pled the necessary elements, and (4) alternatively Corkern has official immunity from the state law tort claims.  Doc. No. 125, at 8.

    *1.*     *Fourth Amendment Unlawful Arrest Claim*

    Ferguson alleges Corkern "assisted and participated" in the unlawful arrest carried out by Dunn.  Doc. No. 123, at 18.  As previously analyzed, Dunn had probable cause to arrest Ferguson, and the arrest was not unlawful.  Ferguson has failed to state a claim against Dunn for unlawful arrest for which relief can be granted, and his claim against Corkern fails for the same reason.

    *2.*     *Fourth Amendment Excessive Force Claim*

    To establish a claim of excessive force under the Fourth Amendment, Ferguson must demonstrate (1) an injury, (2) the injury resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of the force was clearly unreasonable.  *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)).  In evaluating reasonableness, factors to consider include the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  *Deville*, 567 F.3d at 167.  Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance.  *Id.*  The court

must adopt "the perspective of a reasonable officer on the scene, rather than [judge] with the 20/20 vision of hindsight." *Brothers v. Zoss*, 837 F.3d 513, 518 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1229 (2017). Taking the perspective of an objective and reasonable officer must allow for the fact that officers are often forced to make split-second judgments about the amount of force necessary in tense and uncertain circumstances. *Brothers*, 837 F.3d at 518–19. The officer's underlying intent or motivation is irrelevant because the standard is an objectively reasonable standard. *Id.* at 519. An excessive force claim is analyzed without regard as to whether the arrest itself was justified. *Freeman*, 483 F.3d at 417.

Ferguson fails to adequately allege the last two of the three elements of excessive force against Corkern. It is unclear if Ferguson has alleged a sufficient injury to satisfy the first element. Ferguson has not alleged that Corkern caused him any physical injuries, but he has alleged the psychological injuries of "dire mental distress," "emotional distress and mental anguish." Doc. No. 123, at 15–16. Purely psychological injuries can sustain an excessive force claim, though some "injuries are so slight that they will never satisfy the injury element." *Lincoln v. Turner*, 874 F.3d 833, 846 (5th Cir. 2017) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 397–98 (5th Cir. 2004)). Because Ferguson fails to adequately allege the last two elements, the analysis will continue by assuming Ferguson has sufficiently alleged the first element.

For the second element, Ferguson has not sufficiently alleged that his psychological injuries resulted "directly and only" from Corkern's use of force in pointing the rifle. *Trammell*, 868 F.3d at 340. In fact, Ferguson has alleged each of the seventeen Defendants caused him "emotional distress and mental anguish" for each of his sixteen claims. *See generally* Doc. No. 123, at 15–36. Additionally, Ferguson has not sufficiently alleged that Corkern's act of pointing a rifle at Ferguson during the arrest for less than one minute was "clearly excessive." *See Brothers*,

837 F.3d at 516 (holding that officers who pointed their guns at a noncompliant suspect did not use excessive force); *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1230–31 (5th Cir. 1988) (holding that the officer's act of pointing a gun at the plaintiff was not "grossly disproportionate to the need for action under [the] circumstances," even when plaintiff made no specific threat to the officer and the officer said nothing to the plaintiff before pointing the gun).  Because Ferguson has failed to allege plausible facts supporting the second element of an excessive force claim, this claim should be dismissed.

For the third element, Ferguson has not sufficiently alleged that the force Corkern used was "clearly unreasonable."  *Trammell*, 868 F.3d at 340.  As Disc 1 illustrates, Ferguson was actively noncompliant with Dunn's instructions for Ferguson to identify himself and provide his driver's license, Ferguson had his windows mostly rolled up, and the curtains in the vehicle's windows made it difficult to ascertain if Ferguson had any weapons or other individuals in the car.  Under the facts and circumstances of this situation, a reasonable officer forced to make a split-second decision in a tense situation would not clearly be acting unreasonably by pointing a rifle at Ferguson for less than one minute during the arrest. *See Brothers*, 837 F.3d at 516; *Hinojosa*, 834 F.2d at 1230–31.  Because Ferguson has failed to allege plausible facts supporting the third element of an excessive force claim, this claim should be dismissed.

a.    *Qualified Immunity*

In the alternative, even if Ferguson stated a claim for excessive force against Corkern that is plausible on its face (which he has not), Corkern has argued that he is immune from suit on this claim under qualified immunity.  Doc. No. 125, at 22.  Qualified immunity attaches to the actions of government officials—including police officers—when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Kisela v. Hughes*, __ U.S. __, 138 S. Ct. 1148, 1152 (2018) (citation omitted) (per curiam). "Reasonableness" is judged against the "backdrop of the law at the time of the conduct." *Id.* (citation omitted). A "clearly established" right does not require a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citations omitted). In plain terms, "immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation omitted). Qualified immunity is based on the idea that officials who perform their duties reasonably should not fear the harassment, distraction, and liability of a civil lawsuit for simply doing their job, while those who exercise their power irresponsibly should be held accountable. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To determine whether the official is entitled to qualified immunity, the court employs a two-step analysis. *Freeman*, 483 F.3d at 410. First, the court must determine whether the facts alleged demonstrate that the defendant has violated a plaintiff's constitutional right. *Id.* If there is no violation, then the defendant is entitled to qualified immunity, and the analysis ends there. *Id.* at 410–11. Second, if the official violated a plaintiff's constitutional right, the official is still entitled to qualified immunity as long as the alleged conduct was not objectively unreasonable in light of clearly established law at the time of the conduct in question. *Id.* at 411 (citation omitted). When the second step of the *Freeman* analysis is dispositive, a court may exercise its sound discretion to analyze only that step, depending on the particular case at hand. *Pearson*, 555 U.S. at 236–38.

In the instant case, the first *Freeman* step for qualified immunity requires the court to determine if Ferguson's Fourth Amendment right against excessive force was violated. *Freeman*, 483 F.3d at 410. Based on the analysis above, Corkern did not violate Ferguson's constitutional right by pointing the rifle at him, and Corkern is entitled to qualified immunity. However, out of

an abundance of caution, the analysis continues with the second step below as if Ferguson could satisfy the first step.

The second *Freeman* step examines if the alleged conduct was "objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman*, 483 F.3d at 411.  In other words, "officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001).  Ferguson has not shown a clearly established constitutional right existed at the time of his arrest to prevent officers from pointing weapons at noncompliant suspects during an arrest.  In fact, under *Brothers*, 837 F.3d at 516, and *Hinojosa*, 834 F.2d at 1230–31, it appears to be clearly established that officers may do so.

Ferguson argues Corkern is not entitled to qualified immunity because Corkern "traveled outside his jurisdictional limits," and was therefore "outside the scope of his duties as a Newton City Police Officer." Doc. No. 140, at 10–11.  Even if Ferguson's allegation is correct that Corkern was outside his jurisdiction—setting aside for a moment that this allegation is conclusory and without factual backing—Ferguson has not shown a clearly established constitutional right that city police officers cannot assist DPS Troopers during arrests outside the jurisdiction of the city police officer.

Because Ferguson has failed to allege facts sufficient to plead around Corkern's qualified immunity, and his argument in response to Corkern's invocation qualified immunity (*id.*) has not pointed to any clearly established statutory or constitutional rights, Ferguson's Fourth Amendment claim for excessive force against Corkern fails to state a claim for which relief can be granted and should be dismissed.

3.     *Intentional Infliction of Emotional Distress Claim*

Ferguson alleges his intentional infliction of emotional distress (IIED) claim against Corkern based on Corkern's "reckless" act of pointing a rifle at Ferguson during the arrest.  Doc. No. 123, at 33–34.  Corkern argues Ferguson has failed to allege sufficient facts for all of the elements of IIED, and IIED is a gap-filler tort that is inappropriate in this case.  Doc. No. 125, at 28–29.

To plead a claim for IIED, Ferguson must allege sufficient facts for each of these elements:

(1)  Corkern acted intentionally or recklessly;
(2)  Corkern's conduct was extreme and outrageous;
(3)  Corkern's actions caused the plaintiff emotional distress; and
(4)  Ferguson's resulting emotional distress was severe.

*Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (citing *Std. Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998)).  For the second element, conduct that is "extreme and outrageous" means that it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Id.* (internal quotation marks omitted) (citation omitted).  Whether conduct is extreme and outrageous is a question of law for the court to determine.  *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001).  Threats themselves do not rise to the level of being extreme and outrageous.  *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999).  Ferguson has not alleged any conduct by Corkern that is extreme and outrageous.  Corkern's act of pointing a rifle at Ferguson during the arrest for less than one minute (Doc. No. 123, at 10, 16; Disc 1, at 43:57–44:39) does not constitute extreme and outrageous conduct.  *See Hinojosa*, 834 F.2d at 1231 (holding Texas law does not circumscribe an officer's ability to make a "conditional threat to use actual force if necessary by pointing a gun at someone" in the course of duty).  Corkern's alleged actions do not even come close to the level of being extreme and outrageous

under the law.  Thus, Ferguson has failed to plead a necessary element of an IIED claim, and this claim should be dismissed.

Additionally, the IIED tort itself is a "gap-filler" tort judicially created for the limited purpose of allowing recovery in the rare instance in which a defendant intentionally inflicts severe emotional distress in such an unusual manner that the victim has no other recognized theory of redress.  *Hoffmann-La Roche*, 144 S.W.3d at 447.  A plaintiff must establish that no alternative cause of action would provide a remedy for the severe emotional distress caused by the defendant's conduct, and this is true even if the alternative cause of action is barred or independently unsuccessful.  *Creditwatch*, *Inc. v. Jackson*, 157 S.W.3d 814, 816–17 (Tex. 2005).  Ferguson seeks to recover damages for his "emotional distress and mental anguish" for all four of his claims against Corkern, not just his IIED claim.  Accordingly, his IIED claim is not necessary to fill any gap in his claims—three other causes of action already allege the same underlying conduct and damages as the IIED claim.  Thus, this claim should be dismissed because it is not necessary as a gap-filler.

### a.    Official Immunity

Corkern argues he is entitled to "official immunity" from state tort law claims as a government official.  Doc. No. 125, at 29–30.  "Government officials in Texas are officially immune from liability for the performance of their (1) discretionary duties (2) in good faith (3) as long as they are acting within the scope of their authority."  *Murray v. Earle*, 405 F.3d 278, 294 (5th Cir. 2005).  Ferguson argues Corkern is not entitled to official immunity because he acted outside the scope of his authority when he traveled outside his jurisdiction to participate in Ferguson's arrest.  Doc. No. 140, at 12.

A discretionary function involves personal deliberation, decision and judgment, and it is distinguished from a ministerial duty, which requires rote obedience to orders or performance of a function to which the actor has no choice. *Id.* Corkern was performing a discretionary function during the arrest of Ferguson.

An officer acts in "good faith" if a reasonably prudent officer, under the same circumstances, could have believed that his actions were correct. *Id.* Ferguson argues that Corkern acted in bad faith by traveling outside his jurisdiction when he knew other officers were on the scene already or were on their way. Doc. No. 140, at 12. However, Ferguson does not allege any actual facts about what Ferguson knew about other officers responding, except that "Dunn radioed for aid from other law enforcement" officers and Corkern responded, along with the NCSO Deputies and non-party Hawthorne. Doc. No. 123, at 9. A reasonably prudent officer, under the same circumstances, could have believed that responding to Dunn's call for aid was the correct action. *See City of Dallas v. Brooks*, 349 S.W.3d 219 (Tex. App.—Dallas 2011, no pet.) (holding that officer was entitled to official immunity when he was responding to another officer's call for backup). Accordingly, Corkern acted in good faith.

An officer acts within the scope of his authority if he is discharging the duties generally assigned to him, even if his actions may have been wrong or negligent. *Brooks*, 349 S.W.3d at 227. Officers can act within the scope of their authority even when they are outside of their geographical jurisdiction. *See Wethington v. Mann*, 172 S.W.3d 146, 152 (Tex. App.—Beaumont 2005, no pet.) (holding officer who responded to emergency call outside of his geographical jurisdiction was still entitled to official immunity). The focus is on whether the officer is discharging duties generally assigned to him. *Id.* (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994). For Corkern, his general duties obviously include arresting

individuals and assisting other peace officers with arrests.  Accordingly, Corkern acted within the scope of his authority.

Based on the facts pleaded by Ferguson in his complaint, Corkern is entitled to official immunity under Texas law because he performed discretionary duties during the arrest in good faith and within the scope of his authority.  Thus, Corkern is immune from suit on Ferguson's IIED claim, and the claim should be dismissed.

   *4.      Assault Claim*

Under Texas law, a person commits assault if he "intentionally or knowingly threatens another with imminent bodily injury."  Tex. Penal Code § 22.01(a)(2).  However, "activity that would otherwise subject a person to liability in tort for assault does not constitute tortious conduct if the actor is 'privileged' to engage in that conduct."  *Hinojosa*, 834 F.2d at 1231.  Police officers are authorized to carry weapons at all times.  *Id.* (citing Tex. Penal Code § 46.03).  Officers are privileged to *use* actual force in necessary situations in their performance of duties as officers, and they are also privileged to *threaten* the use of force.  *See generally id.* at 1231–32.  Texas law does not circumscribe an officer's ability to make a "conditional threat to use actual force if necessary by pointing a gun at someone" in the course of duty.  *Id.* at 1231.  As made clear by Ferguson's complaint and Disc 1, Ferguson was uncooperative with the Dunn's requests, he refused to provide identification, the interior of the van could not be adequately viewed because of the curtains, and the officers were taking precautions to protect the safety of other officers during the arrest.  Under these circumstances, Corkern was privileged to threaten the use of force with his weapon, and an assault claim against Corkern for pointing his weapon at Ferguson fails to state a claim for which relief can be granted.  *See id.* ("By giving a police officer the ability to pull out and point a service revolver at someone without risking tort liability, he may be able to abort a potentially violent

situation.").

> a.   *Official Immunity*

As previously discussed in the context of Ferguson's IIED claim, Corkern is entitled to official immunity from Ferguson's state tort law claims.  Accordingly, Corkern is immune from suit on Ferguson's assault claim, and this claim should be dismissed.

**D.   Newton County Sheriff's Office Deputies Charles Willis, Josh Beckman, and Brandon Thurman**

Based on the assistance they provided to Dunn during the arrest, Ferguson alleges the following causes of action against Willis, Beckman, and Thurman (NCSO Deputies):

(1)  Unlawful arrest in violation of the Fourth Amendment;
(2)  Excessive force in violation of the Fourth Amendment; and
(3)  State law intentional infliction of emotional distress.

Doc. No. 123, at 15–20, 33–34.  The NCSO Deputies argue Ferguson's Fourth Amendment claims should be dismissed because he has failed to allege sufficient facts showing that the NCSO Deputies were personally involved in the arrest, they used excessive force, and Ferguson's constitutional rights were deprived.  Doc. No. 131, at 9.  The NCSO Deputies also argue the tort claim must be dismissed pursuant to the Tex. Civ. Prac. & Rem. Code, Texas Tort Claims Act (TTCA), § 101.002.  Doc. No. 131, at 14.

> 1.   *Fourth Amendment Unlawful Arrest Claim*

Ferguson alleges all three NCSO Deputies "assisted and participated" in the unlawful arrest carried out by Dunn.  Doc. No. 123, at 17–18.  As previously analyzed, Dunn had probable cause to arrest Ferguson, and the arrest was not unlawful.  Ferguson has failed to state a claim against Dunn for unlawful arrest for which relief can be granted, and his claim against the NCSO Deputies fails for the same reason.

2.     *Fourth Amendment Excessive Force Claim*

As stated previously, to establish a claim of excessive force under the Fourth Amendment, Ferguson must demonstrate (1) an injury, (2) the injury resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of the force was clearly unreasonable. *Trammell*, 868 F.3d at 340.  For his excessive force claim against the NCSO Deputies, Ferguson has solely alleged that they used excessive force when they unholstered their handguns during his arrest.  Doc. No. 123, at 16.  Ferguson has not alleged that any NCSO Deputy pointed his weapon at Ferguson—only Officer Corkern pointed a weapon.  Ferguson has not alleged that any NCSO Deputies touched him or physically harmed him.  Ferguson has not alleged any injury that is factually traceable to the conduct of the NCSO Deputies.  In fact, Ferguson has not alleged that the NCSO Deputies used any actual "force"—let alone clearly excessive or unreasonably excessive force—against him.  Just as Corkern did not use excessive force by pointing his weapon at Ferguson during the arrest, the NCSO deputies did not use excessive force by simply holding their weapons without pointing them at Ferguson during the arrest.  *See Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305–06 (5th Cir. 2004) (holding evidence was insufficient to find excessive force when officers drew their weapons without pointing them at plaintiff, and officers never hostilely or forcefully touched the plaintiff); *see also Brothers*, 837 F.3d at 516; *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1230–31 (5th Cir. 1988).  Accordingly, Ferguson has failed to state an excessive force claim against the NCSO Deputies for which relief can be granted.

3.     *Intentional Infliction of Emotional Distress Claim*

For their allegedly "reckless" acts of aiding Dunn's arrest of Ferguson with their weapons unholstered, Ferguson argues the NCSO Deputies are each liable for the intentional state law tort

of IIED.  Doc. No. 123, at 33–34.  The NCSO Deputies argue Ferguson's tort claim must be dismissed pursuant to the TTCA.  Doc. No. 131, at 14.  The TTCA can require dismissal of a suit brought against an employee of a governmental unit, even if a plaintiff attempted to sue the employee in her "individual" capacity only.[7]  The TTCA considers suits to be against governmental employers in their "official" capacity in certain circumstances:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TTCA, § 101.106(f).  The TTCA strongly favors dismissal of governmental employees, and Texas courts have developed a three-pronged test for determining if a suit is against governmental employee in her official capacity, evaluating whether: (1) the defendant is an employee of a governmental unit; (2) the defendant is acting within the general scope of her employment; and (3) the suit could have been brought under the TTCA against the governmental unit.  *Lopez v. Serna*, 414 S.W.3d 890, 894 (Tex. App.—San Antonio 2013, no pet.).

In Ferguson's response to the Deputies' motion to dismiss, Ferguson has not argued that the first or third prongs of § 101.106(f) are not satisfied.  Indeed, the first and third prongs are satisfied because the Deputies are "employees" under TTCA, § 101.001(2), and the Deputies were employed by a "governmental unit" (Newton County) that Ferguson could have sued instead.  *Id.* § 101.00(3)(B).  However, Ferguson argues the Deputies' acts were outside the general scope of their employment under the second prong.  Doc. No. 139, at 18.

---

[7] Ferguson has attempted to sue the NCSO Deputies in their "individual" capacities as "deput[ies] acting under the color of law for the Newton County Sheriff's Office."  Doc. No. 123, at 1, 5–6.

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority."  TTCA, § 101.001(5).  An employee's act is not within the general scope of employment "when it occurs within an independent course of conduct *not intended by the employee* to serve any purpose of the employer." *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017) (emphasis in original).  An employee's "subjective intent" behind her actions is irrelevant to the scope-of-employment analysis.  *Id.* at 752.  Instead, the TTCA focuses on an objective assessment of "whether the employee was doing her job when she committed an alleged tort," and the Supreme Court of Texas prescribes the following question: "Is there a connection between the employee's job duties and the alleged tortious conduct?"  *Id.*  An employee's negligence, ulterior motive, or personal animus is irrelevant to this question.  *Id.*

Ferguson has not alleged any set of facts in his complaint—nor does his response to the motion to dismiss effectively argue—that the NCSO Deputies' conduct was not intended to serve the purposes of their employer in arresting Ferguson.  The job of an NCSO Deputy sometimes requires arresting people who violate the law, officers are issued weapons to aid in their work, and the allegedly tortious conduct of the NCSO Deputies stems from their use of weapons while arresting Ferguson after he broke the law.  All of the NCSO Deputies were simply doing their jobs when they committed the alleged tort.  Accordingly, the second prong of the test is satisfied, and Ferguson's tort claim against the NCSO Deputies under the TTCA is considered to be brought against them in their "official" capacities only.

Individuals sued in their official capacity are entitled to the same sovereign immunity protections available to the person's employer.  *Nueces County v. Ferguson*, 97 S.W.3d 205, 214–

15 (Tex. App.—Corpus Christi 2002, pet. denied).  Because Ferguson has sued the Deputies in their official capacities for the purposes of the TTCA, the Deputies are entitled to sovereign immunity.  Accordingly, the Deputies are immune from tort claims under the TTCA except where the TTCA has expressly waived sovereign immunity, which it does in three areas: (1) the injury results from the operation of a publicly-owned automobile by the employee; (2) the injury arises out of a condition or use of tangible personal property; or (3) the injury arises from a premises defect.  *Sampson v. Univ. of Texas at Austin*, 500 S.W.3d 380, 384 (Tex. 2016) (citing TTCA, § 101.021).  A defendant with sovereign immunity is immune from intentional tort claims.  *Young v. City of Dimmitt*, 787 S.W.2d 50, 51 (Tex. 1990) (citing TTCA, § 101.057).  Ferguson's IIED claim against the Deputies is an intentional tort that does not fit within any of the TTCA's express waivers to sovereign immunity.  Thus, this claim is barred by sovereign immunity and should be dismissed.

### E.    Patrick Auto Defendants Parvin Butler, Angie Brown, and Pete Patrick

Ferguson alleges two causes of action against the Patrick Auto Defendants:

(1)   Unlawful seizure of vehicle in violation of the Fourth Amendment; and
(2)   State law theft.

Doc. No. 123, at 20–24.  Ferguson alleges that Butler is the tow truck driver from Patrick Auto who removed Ferguson's vehicle from the scene of the arrest, Brown is the Patrick Auto employee who received Ferguson's payment before releasing the car to Ferguson, and Patrick is the owner of Patrick Auto who kept the vehicle until he profited from Ferguson's payment.  *Id.* at 11, 21. Like Ferguson, the Patrick Auto Defendants are proceeding *pro se*, and their pleadings are also held to "less stringent standards than formal pleadings drafted by lawyers," and as such, must be liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002).  The Patrick Auto Defendants argue that both claims should be

dismissed pursuant to FED. R. CIV. P. 12(b)(6), and, alternatively, the court should decline to exercise supplemental jurisdiction over the state law tort claim.  Doc. No. 132.

      1.     *Fourth Amendment Unlawful Seizure Claim*

Ferguson argues he has a private right of action against the Patrick Auto Defendants under § 1983 to redress the violation of his Fourth Amendment rights because they acted under color of state law in depriving him of his rights.  Doc. No. 136, at 1; s*ee Tex. Mfr'd. Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996) ("Section 1983 affords a private cause of action to any party deprived of a constitutional right under color of state law.").  Section 1983 is not itself a source of substantive rights, but rather it merely provides a method for vindicating other federal rights.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  In allegations like those brought by Ferguson, where a private citizen is alleged to have committed a § 1983 violation, the plaintiff must allege that the citizen is either a state actor or conspired with state actors.  *See Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) ("For a private citizen . . . to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors.") (internal quotation marks omitted).  In order to sustain his claim, Ferguson must allege actual facts demonstrating how the Patrick Auto Defendants and Dunn had "an agreement to commit an illegal act" to deprive the plaintiff of his constitutional rights.  *See Priester*, 354 F.3d at 420.

Dunn is a state actor, and Ferguson has broadly argued the Patrick Auto Defendants (private citizens) "knowingly participat[ed]" and "assisted" Dunn in violating Ferguson's Fourth Amendment rights "under color of state law."  Doc. No. 123, at 21.  Ferguson accuses the Patrick Auto Defendants of conspiring or agreeing to commit an illegal act to deprive Ferguson of his constitutional rights (*see id.*), but such allegations alone are insufficient in this case because they

are merely legal conclusions without factual support.  *See Priester*, 354 F.3d at 420 ("Allegations that are merely conclusory, without reference to specific facts, will not suffice"); *see also Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) ("Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss.").  Ferguson does not allege the facts necessary to show an agreement by any of the Patrick Auto Defendants to commit an illegal act.  Aside from his short statement that "Dunn gave [Ferguson's] car to Butler" (Doc. No. 123, at 11), Ferguson does not allege any facts about contact, communication, or agreement between any of the Patrick Auto Defendants and Dunn.  Additionally, the acts of private contractors, such as Patrick Auto Supply, do not become acts of the state by virtue of their engagement in performing public contracts.  *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840–41 (1982).  It is not enough to allege that the Patrick Auto Defendants "knowingly particpat[ed]" and "assisted" Dunn (Doc. No. 123, at 21)—Ferguson must allege facts demonstrating how the parties agreed to commit an illegal act.  Because Ferguson has failed to allege specific facts to demonstrate an agreement between the Patrick Auto Defendants and a state actor to deprive Ferguson of his constitutional rights, Ferguson has failed to adequately state a Fourth Amendment claim for unlawful seizure upon which relief can be granted against the Patrick Auto Defendants, and this claim should be dismissed.

    2.     *State Law Theft Claim*

Because he did not affirmatively consent to his vehicle being towed, and the Patrick Auto Defendants required him to pay $241.60 before releasing the vehicle back to him, Ferguson alleges a state law theft claim against the Patrick Auto Defendants.  Doc. No. 123, at 12, 24.  To sustain a theft claim under the Texas Theft Liability Act, Ferguson must sufficiently allege all of the following elements:

(1)  Ferguson had a possessory right to the vehicle;
(2)  The Patrick Auto Defendants unlawfully appropriated the vehicle by taking it without Ferguson's effective consent;
(3)  The Patrick Auto Defendants appropriated the property with the intent to deprive Ferguson of the property; and
(4)  Ferguson sustained damages as a result of the theft.

Tex. Civ. Prac. & Rem. Code § 134.001; *Haler v. Boyington Capital Grp., Inc.*, 411 S.W.3d 631, 635 (Tex. App.—Dallas 2013, pet. denied).  Ferguson has sufficiently alleged that (1) he had a possessory right to the vehicle, (3) the Patrick Auto Defendants intended to deprive Ferguson of the vehicle until he paid for its release (*see* Tex. Penal Code 31.01(2)(B)), and (4) Ferguson sustained damages.  However, Ferguson has not sufficiently alleged that the Patrick Auto Defendants (2) unlawfully appropriated the vehicle.  Ferguson has to show that the Patrick Auto Defendants intended to appropriate the vehicle unlawfully to sustain a claim against them.  As discussed above, Ferguson has not sufficiently alleged that the Patrick Auto Defendants conspired or agreed with Dunn to commit an unlawful act.  Additionally, Ferguson has not alleged or argued how Dunn was not able to give "effective consent" on Ferguson's behalf after the arrest.  Though Ferguson has sufficiently alleged facts supporting elements (1), (3), and (4) for his theft claim, he has not alleged sufficient facts supporting element (2).  Because Ferguson has not alleged sufficient facts for all of the theft elements, this claim should be dismissed.

F.      **Judge Craig Mixson and Judge Connie Smith**

Previously, Ferguson's First Amended Complaint brought only federal claims against Judge Mixson and Judge Smith, and the court granted a motion to dismiss those claims with prejudice based on judicial immunity.  *See* Doc. Nos. 60, 93.  Though largely based on the same or similar factual allegations, Ferguson's Fifth Amended Complaint now brings the following state law tort claims:

(1) Gross negligence/falsifying government document against Judge Smith for knowingly making a "false entry on an arrest warrant" (Doc. No. 123, at 26);

(2) Gross negligence/concealing government document against Judge Smith for intentionally concealing Ferguson's criminal case file (*id.* at 27);

(3) Gross Negligence against Judge Mixson because he "lacked all jurisdiction to grant Stanley's withdrawal" (*id.* at 29);

(4) Malicious prosecution against Judge Smith for "playing an active role in the malicious prosecution of [Ferguson] when they collectively removed [his] case file from its duly authorized location" (*id.* at 31); and

(5) Intentional infliction of emotional distress against Judge Smith for recklessly issuing a warrant for Ferguson which lacked probable cause (*id.* at 34) and against Judge Mixson for recklessly granting Stanley's motion to withdraw in a case that was outside of his jurisdiction (*id.* at 36).

The motion to dismiss argues that Ferguson's claims against both judges are barred by judicial immunity. Doc. No. 131, at 7–9. Judicial immunity is an outright bar against a plaintiff's suit, rather than just from the ultimate assessment of damages. *West v. Robinson*, 486 S.W.3d 669, 673 (Tex. App.—Amarillo 2016, pet. denied) (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). Judicial immunity is a generous shield, and applies even in instances where the judge is alleged to have acted in error, maliciously, corruptly, in bad faith, or "in excess of his authority." *Id.* (citations omitted). A plaintiff may defeat a claim of judicial immunity in two instances: (1) where the judge has taken non-judicial action, and (2) where the judge takes actions that are in the "complete absence of all jurisdiction." *James v. Underwood*, 438 S.W.3d 704, 709 (Tex. App.—Houston [1st Dist.] 2014, reh'g overruled) (quoting *Mireles*, 502 U.S. at 12).

*1.    Non-Judicial Action*

The court considers the following factors to determine whether a judge's action is non-judicial:

(1) whether the act complained of is normally performed by a judge;

(2) whether the acts occurred in a judicial setting like a courtroom or appropriate adjunct setting;

(3) whether the controversy arises out of a case pending before the judge; and

(4) whether the act arose out of an interaction with the judge in her judicial capacity.

*See Spease v. Olivares*, 509 S.W.3d 512, 518 (Tex. App.—El Paso 2016, no pet.) (citing *Bradt v. West*, 892 S.W.2d 56, 67 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("*Bradt* factors"). The *Bradt* factors are broadly construed in favor of judicial immunity.  *Bradt*, 892 S.W.2d at 67. Moreover, a judge enjoys immunity even if only some, rather than all, of the *Bradt* factors are met. *Id.*

When evaluating the allegations against Judge Smith under the *Bradt* factors—even taking Ferguson's allegations to be true—Judge Smith's actions were a result of, and in connection with, normal judicial functions.  For Judge Smith's alleged actions concerning the arrest warrant, *Bradt* factor (1) is satisfied because issuing arrest warrants is a normal judicial function, and factor (4) is satisfied because the judge was sought out in her official judicial capacity to issue the warrant.[8] For Judge Smith's alleged actions concerning the concealed case file, *Bradt* factor (3) is satisfied because the case was pending before the court, and factor (1) is satisfied because managing case files is a normal judicial function.[9]  As previously stated, judicial immunity even applies in instances where the judge is alleged to have acted maliciously, corruptly, or in bad faith.  *Pierson*, 386 U.S. at 554.  Thus, all of Judge Smith's alleged actions were "judicial."

When he granted Stanley's withdrawal as Ferguson's defense attorney, Judge Mixson was (1) granting a typical motion in a normal judicial function, (2) in the courtroom, (3) in a controversy related to a pending case before him, and (4) in his official judicial capacity.  Thus, all four of the *Bradt* factors are satisfied for the allegations against Judge Mixson.  Accordingly,

---

[8] *Bradt* factor (2) is likely satisfied as well because such acts often occur in chambers, but Ferguson has not alleged the location, and the undersigned does not rely on factor (2) to conclude that Judge Smith's actions were judicial.

[9] *Bradt* factor (2) is likely satisfied as well because such acts often occur in "adjunct spaces" to the courtroom, though this is not necessarily the case.  Because Ferguson has not alleged the specific location, the undersigned does not rely on factor (2) to conclude that Judge Smith's actions were judicial.

the actions of both Judge Smith and Judge Mixson were "judicial" actions under the *Bradt* factors, and Ferguson can only overcome the judicial immunity defenses by showing that the judges acted outside the scope of their authority.

2.      *Absence of All Jurisdiction*

Ferguson has not specifically alleged that Judge Smith acted without jurisdiction, so she is entitled to judicial immunity from Ferguson's claims.  Ferguson has, however, argued that Judge Mixson acted without jurisdiction.  Doc. No. 123, at 29, 36.  Ferguson's felony case was before District Judge Mixson in the Newton County First Judicial District, and his misdemeanor case was before Judge Smith in Justice of the Peace, Precinct 1 Court.  *Id.* at 14.  According to Ferguson, Judge Mixson appointed Stanley on Ferguson's misdemeanor case, despite the fact that Judge Mixson only had Ferguson's felony case before him.  *Id.* at 12.

Previously, in his First Amended Complaint, Ferguson argued that Judge Mixson violated his rights by "first appointing and then [] granting the withdrawal of counsel in [Ferguson's] misdemeanor Justice of the Peace Court case where [Judge Mixson] lacked all jurisdiction."  Doc. No. 23, at 32.  Ferguson's federal claims against Judge Mixson in the First Amended Complaint were dismissed because it was determined that Judge Mixson did not lack jurisdiction in appointing Stanley as counsel.  Doc. No. 60, at 12–14, 17 (report and recommendation); Doc. No. 93, at 2 (order adopting).  In Ferguson's Fifth Amended Complaint, he does not argue that Judge Mixson's *appointment* of Stanley was outside the scope of Mixson's authority, but he does argue that Judge Mixson acted outside the scope of his authority when he granted Stanley's motion to *withdraw* because Judge Mixson lacked jurisdiction over the misdemeanor case.  Doc. No. 123, at 28–29.  For the same reasons articulated in the previous report and recommendation, Ferguson's argument fails.  *See* Doc. No. 60, at 12–14.  However, out of an abundance of caution, Ferguson's

"new" argument will also be addressed below.

Judge Mixson did not act in the clear absence of all jurisdiction when he appointed Stanley to represent Ferguson, nor when he allowed Stanley to withdraw.  The Failure to Identify charge against Ferguson was a Class C misdemeanor.  Tex. Pen. Code § 38.02(c)(1).  A Class C misdemeanor is punishable by a fine only.  *Id.* § 12.41(3).  Indigent defendants are not entitled to counsel unless charged with a "misdemeanor punishable by confinement or a felony."  Tex. Code Crim. P. Art. 26.04(a).  Thus, even though Ferguson requested counsel for his misdemeanor charge, he was not entitled to it.  If Ferguson was an indigent defendant, however, he was entitled to counsel on his felony charge before Judge Mixson.  As Ferguson has alleged, there was some debate or discussion involving District Attorney Ponthier about whether Stanley was appointed for *both* the misdemeanor and felony, or just the misdemeanor.  *See* Doc. No. 123, at 13–14, 30; Doc. No. 139, at 9–10; *see also* Doc. No. 139, at 10. ("[Mr. Stanley has] been appointed for a potential felony that has not been indicted yet.  He's representing you on that . . . .  If I remove him as counsel [on the misdemeanor], yeah, I can do it on the felony too . . . .  Can I do that?  I think I can.").[10]  If Judge Mixson appointed Stanley to both the felony and misdemeanor, then Judge Mixson had at least some jurisdiction to withdraw Stanley from both cases because of his jurisdiction over the felony case for which appointing an attorney for an indigent defendant is warranted.  If Judge Mixson appointed Stanley to the misdemeanor case only—a case over which Ferguson alleges Judge Mixson had no jurisdiction—then withdrawing Stanley would merely be rectifying the mistake of appointing Stanley without jurisdiction in the first place.  Either way, Judge Mixson did not act in the clear absence of all jurisdiction.  Accordingly, Ferguson's claims against Judge Mixson are barred by judicial immunity.

---

[10] This quote comes from Ferguson's rendering in his brief of a court transcript quoting Judge Mixson.  Doc. No. 139, at 10.

3.       *Alternative Dismissal Under the Texas Tort Claims Act*

In the alternative, Judge Mixson and Judge Smith also argue that that Ferguson's state law tort claims against them should be dismissed pursuant to sovereign immunity under the TTCA. Doc. No. 131, at 14.  Ferguson argues that the judges are not entitled to sovereign immunity because their actions were not within the general scope of their employment.  Doc. No. 139, at 18.

An employee's act is not within the general scope of employment "when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Laverie*, 517 S.W.3d at 753 (emphasis in original).  The TTCA focuses on an objective assessment of "whether the employee was doing her job when she committed an alleged tort," and the Supreme Court of Texas prescribes the following question: "Is there a connection between the employee's job duties and the alleged tortious conduct?" *Id.* at 752.

Ferguson has not alleged any set of facts in his complaint—nor does his response to the motion to dismiss effectively argue—that Judge Mixson and Judge Smith's conduct was not intended to serve the purposes of their employers.  The duties of a judge sometimes requires signing and issuing arrest warrants, managing case files, and appointing and withdrawing defense counsel.  The allegedly tortious conduct of the judges stems from their judicial responsibilities. Accordingly, the three prongs of TTCA, § 101.106(f) are satisfied, and Ferguson's tort claim under the TTCA is brought against the judges in their "official" capacities only.  Judge Mixson and Judge Smith are entitled to sovereign immunity under the TTCA.  Ferguson's state law tort claims against Judge Mixson and Judge Smith do not fit within any of the TTCA's express waivers to sovereign immunity. *See Sampson*, 500 S.W.3d at 384 (citing TTCA, § 101.021).  Thus, Ferguson's claims are barred and should be dismissed.

**G.      Newton County Criminal District Attorney Courtney Ponthier and Assistant District Attorney Robert Hilton**

Previously, Ferguson's First Amended Complaint brought only federal claims against Ponthier and Hilton, and the court granted a motion to dismiss those claims with prejudice based on prosecutorial immunity.  *See* Doc. Nos. 60, 93.  Though largely based on the same or similar factual allegations, Ferguson's Fifth Amended Complaint now brings the following state law tort claims against both Ponthier and Hilton:

(1) Gross negligence/concealing government document for intentionally concealing Ferguson's criminal case file from him in violation of Tex. Penal Code 37.10(a)(3) (Doc. No. 123, at 28);

(2) Civil conspiracy for conspiring to use "malicious prosecution to obtain a plea bargain" and pursuing a criminal charge against Ferguson which lacked probable cause (*id.* at 29–30);

(3) Malicious prosecution because the criminal complaint lacked probable cause and by collectively removing Ferguson's case file from its duly authorized location (*id.* at 31–33); and

(4) Intentional infliction of emotional distress for intentionally acting outside the "scope of their duty in prosecuting" Ferguson's misdemeanor charge and threatening to prosecute a felony, "both of which lacked probable cause" (*id.* at 35).

Ponthier and Hilton argue that Ferguson's claims against them should be dismissed based on prosecutorial immunity.  Doc. No. 131, at 7–9.  For state law tort claims, Texas courts follow the federal approach to prosecutorial immunity.  *Clawson v. Wharton County*, 941 S.W.2d 267, 271 (Tex. App.—Corpus Christi 1996, pet. denied).  A prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as "advocate for the state" in the courts, or when her conduct is "intimately associated with the judicial phase of the criminal process." *See Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) (citation omitted).  Ferguson's allegations against Ponthier and Hilton are barred by prosecutorial immunity because none of their alleged conduct is outside of their roles as advocates for the state, nor has Ferguson alleged any conduct that is not intimately associated with the judicial phase of the criminal process.

Thus, Ferguson's claims against Ponthier and Hilton should both be dismissed for failure to state a claim for which relief can be granted.

### 4.    *Alternative Dismissal Under the Texas Tort Claims Act*

In the alternative, Ponthier and Hilton also argue that that Ferguson's state law tort claims against them should be dismissed pursuant to sovereign immunity under the TTCA.  Doc. No. 131, at 14.  Ferguson argues the prosecutors are not entitled to sovereign immunity because their actions were not within the general scope of their employment.  Doc. No. 139, at 18.

An employee's act is not within the general scope of employment "when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer."  *Laverie*, 517 S.W.3d at 753 (emphasis in original).  The TTCA focuses on an objective assessment of "whether the employee was doing her job when she committed an alleged tort," and the Supreme Court of Texas prescribes the following question: "Is there a connection between the employee's job duties and the alleged tortious conduct?"  *Id.* at 752.

Ferguson has not alleged any set of facts in his complaint—nor does his response to the motion to dismiss effectively argue—that Ponthier and Hilton's conduct was not intended to serve the purposes of their employer.  The duties of a prosecutor sometimes involve managing case files, attempting to reach plea bargains, and prosecuting imperfect criminal cases.  The allegedly tortious conduct of Ponthier and Hilton stems from their responsibilities as prosecutors.  Accordingly, the three prongs of TTCA, § 101.106(f) are satisfied, and Ferguson's tort claim under the TTCA is brought against Ponthier and Hilton in their "official" capacities only.  Ponthier and Hilton are entitled to sovereign immunity under the TTCA.  Ferguson's state law tort claims against Ponthier and Hilton do not fit within any of the TTCA's express waivers to sovereign immunity.  *See Sampson*, 500 S.W.3d at 384 (citing TTCA, § 101.021).  Thus, Ferguson's claims are barred and

should be dismissed.

### H.      Newton County Head Jailer Gwen Kelley

Based on her actions as "head jailer" at the Newton County Jail when she accepted physical custody of Ferguson from Dunn (Doc. No. 123, at 11), Ferguson alleges the following causes of action against Kelley:

(1)   Unlawful arrest in violation of the Fourth Amendment;
(2)   Due process violations protected by the Fourteenth Amendment; and
(3)   State law intentional infliction of emotional distress.

Doc. No. 123, at 16–23, 33–34.  Kelley argues that Ferguson's Fourth Amendment claim fails because probable cause existed for the arrest, she is protected by the intermediary rule, Ferguson's Fourteenth Amendment claim fails because Ferguson was not deprived of a valid right, and the state law tort claim should be dismissed pursuant to sovereign immunity under the TTCA.  Doc. No. 131, at 11–12, 14.

#### 1.      Fourth Amendment Unlawful Arrest Claim

As previously discussed, Dunn had probable cause to arrest Ferguson, and the arrest was not unlawful.  Ferguson has failed to state a claim against Dunn for unlawful arrest for which relief can be granted, and his claim against Kelley fails for the same reason.

#### 2.      Fourteenth Amendment Due Process Claim

As previously discussed, Ferguson's Fourteenth Amendment right to procedural due process was not violated when he was taken to jail before appearing before Judge Smith later the same day.  Accordingly, this claim should be dismissed.

#### 3.      Intentional Infliction of Emotional Distress Claim

Kelley argues that Ferguson's state law tort claim for IIED should be dismissed pursuant to sovereign immunity under the TTCA.  Doc. No. 131, at 14.  Ferguson argues Kelley is not

entitled to sovereign immunity because her actions were not within the general scope of her employment.  Doc. No. 139, at 18.

An employee's act is not within the general scope of employment "when it occurs within an independent course of conduct *not intended by the employee* to serve any purpose of the employer."  *Laverie*, 517 S.W.3d at 753 (emphasis in original).  The TTCA focuses on an objective assessment of "whether the employee was doing her job when she committed an alleged tort," and the Supreme Court of Texas prescribes the following question: "Is there a connection between the employee's job duties and the alleged tortious conduct?"  *Id.* at 752.

Ferguson has not alleged any set of facts in his complaint—nor does his response to the motion to dismiss effectively argue—that Kelley's conduct was not intended to serve the purposes of her employer.  The job of a "head jailer" obviously requires putting people in jail who have violated the law, and Kelley's allegedly tortious conduct stems from doing her job. Accordingly, the three prongs of TTCA, § 101.106(f) are satisfied, and Ferguson's tort claim under the TTCA is brought against Kelley in her "official" capacity only.  Kelley is entitled to sovereign immunity under the TTCA.  Ferguson's IIED claim against Kelley is an intentional tort that does not fit within any of the TTCA's express waivers to sovereign immunity.  *See Sampson*, 500 S.W.3d at 384 (citing TTCA, § 101.021).  Thus, this claim is barred and should be dismissed.

## I.      Newton County Jailer Ashley Morrow

Based upon her actions in editing portions of a jail security recording, Ferguson alleges the following state law tort claims against Morrow:

(1)  Negligence/falsifying government document;
(2)  Malicious prosecution; and
(3)  Intentional infliction of emotional distress.

Doc. No. 123, at 25–26, 32, and 35.  Morrow argues that all three state law tort claims should be

dismissed pursuant to sovereign immunity under the TTCA.  Doc. No. 131, at 14.

1.      *Sovereign Immunity Under the Texas Tort Claims Act*

Ferguson argues Morrow is not entitled to sovereign immunity under the TTCA because

her actions were not within the general scope of her employment.  Doc. No. 139, at 18.  However,

Ferguson has not alleged any set of facts in his complaint—nor does his response to the motion to

dismiss effectively argue—that Morrow's conduct was not intended to serve the purposes of her

employer.  By Ferguson's own admission, Morrow responded to Ferguson's "Public Information

Request" for a copy of the jail's security recordings during his incarceration by providing a DVD.

Doc. No. 123, at 12.  This was undoubtedly in service of her employer because she answered the

public information request on her employer's behalf, not her own.  Accordingly, the three prongs

of TTCA, § 101.106(f) are satisfied, and Ferguson's tort claims are considered to be brought

against Morrow in her "official" capacities only (for the purposes of the TTCA).  Morrow is

entitled to sovereign immunity under the TTCA.  Ferguson's tort claims against Morrow do not fit

within any of the TTCA's express waivers to sovereign immunity.  *See Sampson*, 500 S.W.3d at

384 (citing TTCA, § 101.021).  Thus, Ferguson's tort claims against Morrow are barred by

sovereign immunity and should be dismissed.

**J.      Justice of the Peace Clerk of Court Linda Pitts**

Based upon her actions allegedly removing and concealing Ferguson's criminal case file,

Ferguson alleges the following state law tort claims against Pitts:

(1)  Gross negligence/concealing government document;
(2)  Malicious prosecution; and
(3)  Intentional infliction of emotional distress.

Doc. No. 123, at 27, 32, and 35.  Pitts argues that all three state law tort claims should be dismissed

pursuant to sovereign immunity under the TTCA.  Doc. No. 131, at 14.

    *1.     Sovereign Immunity Under the Texas Tort Claims Act*

Ferguson argues Pitts is not entitled to sovereign immunity under the TTCA because her actions were not within the general scope of her employment.  Doc. No. 139, at 18.  However, Ferguson has not alleged any set of facts in his complaint—nor does his response to the motion to dismiss effectively argue—that Pitts' conduct was not intended to serve the purposes of her employer.  Her job as Clerk of Court undoubtedly requires Pitts to manage criminal case files, including management of the public's access to those files.  Accordingly, the three prongs of TTCA, § 101.106(f) are satisfied, and Ferguson's tort claims are considered to be brought against Pitts in her "official" capacities only (for the purposes of the TTCA).  Pitts is entitled to sovereign immunity under the TTCA.  Ferguson's tort claims against Pitts do not fit within any of the TTCA's express waivers to sovereign immunity.  *See Sampson*, 500 S.W.3d at 384 (citing TTCA, § 101.021).  Thus, Ferguson's tort claims against Pitts are barred by sovereign immunity and should be dismissed.

## K.     Attorney J. Keith Stanley

Based on his conduct while he was Ferguson's defense attorney, Ferguson alleges the following state law tort claims against Stanley:

(1)  Fraud;
(2)  Malicious prosecution;
(3)  Civil conspiracy; and
(4)  Intentional infliction of emotional distress.

Doc. No. 123, at 24–25, 29–36.  Stanley argues that all four state law tort claims should be dismissed because Ferguson has not sufficiently pleaded the elements for each claim.  Doc. No. 129, at 1.

1.    *Fraud Claim*

To sustain a common law fraud claim against Stanley, Ferguson must sufficiently allege all of the following elements:

(1)  Stanley made a material misrepresentation to Ferguson;
(2)  Stanley knew the misrepresentation was false when he made it, or Stanley made the assertion without knowledge of its truth;
(3)  Stanley intended for the misrepresentation to be acted upon by Ferguson;
(4)  Ferguson relied on the misrepresentation; and
(5)  the misrepresentation caused injury to Ferguson.

*Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015).  Ferguson has sufficiently alleged only four of the five elements.  Ferguson sufficiently alleges that (1) Stanley materially represented that he would file a motion to dismiss in Ferguson's misdemeanor case, but Stanley did not file the motion, (3) Stanley intended for Ferguson to act upon the misrepresentation, (4) Ferguson relied on it, and (5) Stanley's misrepresentation caused him injury.  Doc. No. 123, at 25; Doc. No. 137, at 1–3; *see id.* at 3 (enumerating injuries, some of which are sufficiently pleaded).  However, Ferguson does not sufficiently allege that (2) Stanley knew he was making a false misrepresentation when he made it, or that Stanley made the assertion without knowledge of its truth.  A promise of future performance—like Stanley's promise to file pleadings in the misdemeanor case—can only be "actionable misrepresentation if the promise was made with no intention of performing *at the time it was made*."  *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 291 S.W.3d 768, 774 (emphasis added).  Ferguson has not alleged any facts concerning Stanley's intention to file the motion at the time he made the statement.  Though Ferguson has sufficiently alleged facts supporting elements (1), (3), (4), and (5) for his fraud claim, he has not alleged sufficient facts supporting element (2).  Because Ferguson has not alleged sufficient facts for all of the fraud elements, this claim should be dismissed.

2.    *Malicious Prosecution Claim*

To sustain a malicious criminal prosecution claim against Stanley, Ferguson must sufficiently allege all of the following elements:

(1)   a criminal prosecution was commenced against Ferguson;
(2)   Stanley initiated or procured that prosecution;
(3)   the prosecution terminated in Ferguson's favor;
(4)   Ferguson was innocent of the charges;
(5)   Stanley lacked probable cause to initiate the prosecution;
(6)   Stanley acted with malice; and
(7)   Ferguson suffered damages.

*Kroger Texas Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 n.3 (Tex. 2006) (citation omitted). Ferguson has sufficiently alleged that (1) a criminal prosecution was commenced against him, but he has not alleged any facts supporting the element that (2) Stanley initiated or procured the prosecution.[11]   Ferguson has sufficiently alleged that (3) the prosecution terminated in his favor and (4) he was innocent of the charges, but Ferguson has not sufficiently alleged (5) Stanley, himself, lacked probable cause to initiate the prosecution because Ferguson has not alleged any facts that Stanley initiated the prosecution.   Ferguson has not alleged sufficient facts that (6) Stanley acted with malice,[12] though Ferguson has sufficiently alleged that (7) he suffered injury.

Ferguson has sufficiently alleged elements (1), (3), (4), and (7) for his malicious prosecution claim, he has not sufficiently alleged elements (2), (5), and (6).   Because Ferguson has not alleged sufficient facts for all of the malicious prosecution elements, this claim should be dismissed.

---

[11] "A person initiates a criminal prosecution if he makes a formal charge to law enforcement authorities.   A person procures a criminal prosecution if his actions are enough to cause the prosecution, and but for his actions the prosecution would not have occurred."   *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 292 (Tex. 1994). Ferguson has not alleged sufficient facts that Stanley "initiated" or "procured" the prosecution.

[12] In his response to Stanley's motion to dismiss, Ferguson argues that malice "is inferred from the fact that the charge lacked probable cause." Doc. No. 137, at 9.   This argument is insufficient because Stanley had nothing to do with initiating the charge, and even if he did, the charge itself is not evidence of malice.   In his complaint, Ferguson argues Stanley's role was "delaying the action," failing to file a motion to dismiss, and failing to give good legal advice about the charges lacking probable cause. Doc. No. 123, at 32.   These allegations do not rise to the level of malice in themselves.

### 3.       Civil Conspiracy Claim

To sustain a civil conspiracy claim against Stanley, Ferguson must sufficiently allege all

of the following elements:

(1)  Stanley was a member of a combination of two or more persons;
(2)  Stanley and the other person(s) seek to accomplish an object or course of action that
     is unlawful or accomplish something lawful by unlawful means;
(3)  Stanley and the other person(s) reach a meeting of the minds on the object or course
     of action;
(4)  one or more unlawful, overt acts are taken in pursuance of the object or course of
     action; and
(5)  damages occur to Ferguson as a proximate result.

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017)

(citations omitted).  A civil conspiracy claim is only actionable against a party who was aware of

the intended harm or proposed wrongful conduct at the outset of the combination or agreement.

*Id.*  Ferguson has sufficiently *alleged* that (1) Stanley was a member of a combination with Hilton

and Ponthier.  Though Ferguson has sufficiently alleged that (2) Stanley sought to help Hilton and

Ponthier further a malicious prosecution, he has not sufficiently alleged that Stanley (3) reached a

meeting of the minds with Hilton and Ponthier to do so.  Ferguson has not alleged any facts

showing that Stanley was aware of the proposed wrongful conduct at the outset of an agreement

with Hilton and Ponthier.[13]  Ferguson has sufficiently alleged that (4) Hilton and Ponthier took

overt acts in furtherance of the malicious prosecution and (5) he was injured as a proximate result.

Though Ferguson has sufficiently alleged facts supporting elements (1), (2), (4), and (5) for his

civil conspiracy claim, he has not alleged sufficient facts supporting element (3).   Because

Ferguson has not alleged sufficient facts for all of the civil conspiracy elements, this claim should

---

[13] "For the alleged conspirators to have a 'meeting of the minds,' there must be an agreement among them
and each must have a specific intent to commit the act."  *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 91
(Tex. App.—San Antonio 2003, pet. denied).  Stanley must have been aware of the intended wrongful conduct at the
outset of the combination or agreement.  *See Parker*, 514 S.W.3d at 222 (Tex. 2017).

be dismissed.

### 4.      Intentional Infliction of Emotional Distress Claim

To sustain an IIED claim against Stanley, Ferguson must sufficiently allege all of the following elements:

(1)   Stanley acted intentionally or recklessly;
(2)   Stanley's conduct was extreme and outrageous;
(3)   Stanley's actions caused Ferguson emotional distress; and
(4)   Ferguson's emotional distress was severe.

*Hoffmann-La Roche*, 144 S.W.3d at 445.  Ferguson alleges Stanley is liable for IIED based on the following conduct:  avoiding contact with Ferguson for several months after being appointed as defense counsel, misleading Ferguson by falsely agreeing to file a motion in the case, and intentionally delaying the case.  Doc. No. 123, at 35–36.  Ferguson has sufficiently alleged (1) Stanley acted intentionally or recklessly, but Ferguson has failed to sufficiently allege that (2) Stanley's conduct was extreme and outrageous,[14] (3) Stanley's actions caused any identifiable emotional distress, and (4) Ferguson's emotional distress was severe.[15]  Though Ferguson has sufficiently alleged facts supporting element (1) for his IIED claim, he has not alleged sufficient facts supporting elements (2), (3), and (4).  Because Ferguson has not alleged sufficient facts for all of the IIED elements, this claim should be dismissed.

---

[14] Tortious or otherwise wrongful conduct, standing alone, is insufficient to be "extreme and outrageous." *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001).  Extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (internal quotation marks omitted).  Ferguson has not alleged any facts against Stanley that even remotely approaches extreme and outrageous conduct under the law.

[15] Severe emotional distress means distress so severe that "no reasonable person could be expected to endure it without undergoing unreasonable suffering.  The plaintiff must show more than mere worry, anxiety, vexation, embarrassment, or anger."  *Blanche v. First Nationwide Mortgage Corp.*, 74 S.W.3d 444, 454 (Tex. App.—Dallas 2002, no pet.).

## IV.  Recommendation

Defendant Timothy Wayne Corkern's "12(b)(6) Motion to Dismiss" (Doc. No. 125) should be **granted**, and all of Ferguson's claims against Corkern should be **dismissed with prejudice**.

Defendant J. Keith Stanley's "Third Motion to Dismiss" (Doc. No. 129) should be **granted**, and all of Ferguson's claims against Stanley should be **dismissed with prejudice**.

Defendants Eric Dunn and Steve Holloway's "Fourth Motion to Dismiss" (Doc. No. 130) should be **granted in part** and **denied in part**.  All of Ferguson's claims against Holloway should be **dismissed with prejudice**.  Ferguson's Fourth Amendment unlawful arrest, Fourteenth Amendment due process, and Eighth Amendment excessive bail claims against Dunn should be **dismissed with prejudice**.  Ferguson's Fourth Amendment unlawful seizure and Fourth Amendment unlawful search claims against Dunn should proceed.

Defendants Charles Willis, Josh Beckman, Brandon Thurman, Gwen Kelley, Judge Connie Smith, Linda Pitts, Ashley Morrow, Robert Shane Hilton, Courtney Tracy Ponthier, and Judge Craig Mixson's "Motion to Dismiss" (Doc. No. 131) should be **granted**, and all of the claims against these Defendants should be **dismissed with prejudice**.

Defendants Pete Patrick, Angie Brown, and Parvin Butler's (Patrick Auto Defendants) "Sixth Motion to Dismiss" (Doc. No. 132) should be **granted**, and all of Ferguson's claims against the Patrick Auto Defendants should be **dismissed with prejudice**.

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) (Supp. IV 2011), each party to this action has the right to file objections to this Report and Recommendation.  Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report; and

(4) be no more than eight pages in length without leave of court to exceed the page limitation.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. Tex. Civ. R. CV-72(c).  A party who objects to this Report is entitled to a de novo determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 27th day of April, 2018.

_____

Zack Hawthorn
United States Magistrate Judge