IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| RALPH LYNN FERGUSON, JR.,<br><br>       Plaintiff,<br>vs.<br><br>ERIC MARCINE DUNN, *ET AL.*,<br><br>       Defendants. | No.1:16-CV-00272-MAC |

**REPORT AND RECOMMENDATION GRANTING DEFENDANT DUNN'S
MOTION FOR SUMMARY JUDGMENT**

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and referred to the undersigned United States Magistrate Judge for pretrial management. Pending before the court is Defendant Eric Marcine Dunn's (Dunn) "Motion for Summary Judgment with Brief in Support." Doc. No. 184. On November 2, 2018, *pro se* Plaintiff Ralph Lynn Ferguson, Jr. (Ferguson) filed a response to the motion. Doc. No. 198. On December 11, 2018, Dunn filed a reply. Doc. No. 200. Thereafter, on December 20, 2018, Ferguson filed a sur-reply. Doc. No. 201. After reviewing the motion and responses, the undersigned recommends granting the motion because Ferguson has failed to show a genuine dispute of material fact that Dunn's search or seizure of his vehicle was unconstitutional.

**I.    BACKGROUND**

On August 5, 2014, Ferguson was driving in Newton County, Texas, when he was stopped by Dunn, a Texas Department of Public Safety (DPS) Trooper, for allegedly failing to wear a seatbelt properly. Doc. No. 123, at 5. Despite Dunn's request to do so, Ferguson did not identify himself or produce his driver's license during the stop. *Id.* at 9. Dunn radioed for the aid of other

officers, and eventually Dunn broke the window on Ferguson's vehicle and arrested Ferguson. *Id*. Ferguson's vehicle was searched, seized, and towed. *Id*. at 11. Ferguson was transported to the Newton County Jail, and he posted bond the following day. *Id.* The grand jury declined to indict Ferguson on a felony charge, and eventually the district attorney dismissed the only remaining misdemeanor charge. *Id*. at 15. In connection with these events, Ferguson brought various federal and state law claims against five DPS Troopers (including Dunn), one Newton City Police Officer, one court-appointed defense attorney, two jailers, two judges, one clerk of court, two district attorneys, and three employees of the tow truck company. *See generally* Doc. No. 1 (original complaint); *see also* Doc. No. 123 (operative complaint).

On June 1, 2018, the court dismissed all of the claims against the various Defendants except for the two claims brought against Dunn for allegedly violating Ferguson's Constitutional rights, pursuant to 42 U.S.C. § 1983. *See* Doc. No. 174, at 2–3. Thus, the only remaining claims in the suit are Ferguson's Fourth Amendment unlawful seizure and Fourth Amendment unlawful search claims against Dunn. *See Id.* at 3. In response to Ferguson's claims, Dunn asserts the defense of qualified immunity. Doc. No. 184, at 2.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986); *Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 725 (5th Cir. 2017). When evaluating claims for relief involving alleged constitutional violations, Section 1983 provides a cause of action against any person acting under color of state law who deprives another person of rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. In order to state a claim for relief under § 1983, "a plaintiff must (1) allege a violation of a right

secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

But a qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity protects "all but the plainly incompetent or those who knowingly violate the law," unless existing precedent places the statutory or constitutional question beyond debate. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). If a "section 1983 defendant pleads qualified immunity and shows he is a government official whose position involves the exercise of discretion, the plaintiff then has the burden to 'rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" *Id.* (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)). The official is not required to show that he did not violate clearly established federal rights, rather the burden is placed upon the plaintiff. *Id.* Despite the plaintiff bearing the burden of negating qualified immunity, all inferences are drawn in his favor. *See Brown*, 623 F.3d at 253.

The qualified immunity defense consists of two prongs: (1) whether an official's conduct violated a constitutional right of the plaintiff, and (2) whether the right was clearly established at the time of violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). If the official's actions

clearly violate an established constitutional right, the court must then ask whether qualified immunity is still appropriate based on whether his actions were "objectively reasonable" in light of law which was clearly established at the time of the disputed action. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). "Whether an official's conduct is objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal. *Id.* at 236–37. An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight. *Brown v. Callahan*, 623 F.3d at 523 (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). Essentially, a plaintiff must allege facts sufficient to illustrate that no reasonable officer could have believed his actions were proper. *Callahan,* 623 F.3d at 523 (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).

### III.   ANALYSIS

As stated previously, the qualified immunity defense consists of two prongs: (1) whether an official's conduct violated a constitutional right of the plaintiff, and (2) whether the right was clearly established at the time of violation. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011)). A court may conduct this inquiry in any sequence.

   A. *Whether Dunn's Conduct Violated Ferguson's Constitutional Rights under the Fourth Amendment*

Ferguson claims that Dunn searched and seized his car in violation of the Fourth Amendment. The Fourth Amendment states "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ."

U.S. CONST. amend. IV. However, as discussed below, Dunn's search and seizure of the vehicle did not violate Ferguson's constitutional rights.

    *i.*    *Fourth Amendment Unlawful Seizure of Vehicle Claim*

Ferguson argues that Dunn's seizure of Ferguson's vehicle was unlawful because it violated his rights under the Texas Transporation Code § 545.305. *See* Doc. No. 198, at 3. Section 545.305, Removal of Unlawfully Stopped Vehicle, states that:

> A peace officer listed under Article 2.12, Code of Criminal Procedure, or a license and weight inspector of the department may remove or require the operator or a person in charge of a vehicle to move a vehicle from a highway if the vehicle: . . . (8) is operated by a person an officer arrests for an alleged offense and the officer is required by law to take the person into custody.

As a preliminary matter, because section 1983 is only a remedy for violations of federal statutory and constitutional rights, a state actor's violation of state law alone is not cognizable in a section 1983 claim. *See Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005). Notwithstanding this legal obstacle, Ferguson claims that the seizure pursuant to § 545.305 was unlawful because the offense of Failure to Identify, TEX. PENAL CODE ANN. § 38.02(a) (West 2017), is "not authorized as a first offense arrest, therefor [sic] Dunn was not required to take Plaintiff into custody." Doc. No. 198, at 3. As determined in the court's prior order (Report and Recommendation, Doc. No. 169 at 8–9; Order Adopting [169], Doc. No. 174), the arrest was proper and based on probable cause.[1]

---

[1] Ferguson violated TEX. TRANSP. CODE ANN. § 521.025 and committed an arrestable offense when he refused to display his driver's license. *See* Doc. No. 169, at 8–9. While Dunn wrongfully represented at the time of the arrest what he had probable cause to arrest Ferguson for, namely failure to identify instead of failure to produce his driver's license, Dunn's mistake does not negate the lawfulness of the arrest or his qualified immunity. *See e.g., Club Retro LLC v. Hilton*, 568, F.3d 181, 206 (5th Cir. 2009) (If an officer reasonably but mistakenly believes that probable cause exists, he is still entitled to qualified immunity.). Ferguson argues that he "was under no obligation to produce a license on demand because [he has] not entered into a contract via a 'driver license' compelling [him] to produce a license on demand nor to waive [his] right not to identify." Ferguson Sur-reply, Doc. No. 201, at 2. But the Transportation Code specifically requires that "[a] person required to hold a license under Section 521.021 shall: (1) have in the person's possession . . . the class of driver's license appropriate for the type of vehicle operated; and (2) display the license on the demand of a . . . peace officer." TEX. TRANSP. CODE ANN. § 521.025(a)(1)–(2) (West

Although Ferguson's arrest was lawful, it can still be accompanied by an unlawful *seizure* violating the Fourth Amendment. "Warrantless searches and seizures are 'per se unreasonable unless they fall within a few narrowly defined exceptions.'" *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002). One such exception for warrantless seizure is the "community caretaking" exception that originated in the Supreme Court's decision, *South Dakota v. Opperman*, 428 U.S. 364 (1976).[2] Following an arrest, an officer may impound an arrestee's vehicle in certain circumstances. One of these circumstances is the public caretaking exception. "Public caretaking typically applies when the owner of the vehicle has been arrested while the vehicle is on the public streets." *Trent v. Wade*, 776 F.3d 368, 387 n.13 (5th Cir. 2015). This exception allows police to impound the vehicle to protect the vehicle, its contents, and the surrounding roadways. *Id.* Thus, officers may impound vehicles in furtherance of public safety and community caretaking functions by seizing and removing vehicles that either impede traffic or threaten public safety and convenience. *Opperman*, 428 U.S. at 368; *United States v. McKinnon*, 681 F.3d 203, 209–10 (5th Cir. 2012) (finding that a police officer's decision to impound a vehicle was reasonable under the Fourth Amendment where the vehicle was parked in a public place and could have become a nuisance, and the vehicle could not be lawfully driven away from the scene).

Dunn states in his affidavit that he "impounded Ferguson's vehicle after his arrest to protect the vehicle, its contents, and the surrounding roadways," which was conducted "in furtherance of public safety and community caretaking functions." Doc. No. 184-2, at 2. Because Ferguson, as

---

2017). Therefore, Ferguson's argument that the arrest was unlawful and lacked probable cause causing the seizure to also be unlawful fails.

[2] Ferguson asserts that *South Dakota v. Opperman*, 428 U.S. 364 (1976), and *Trent v. Wade*, 776 F.3d 368 (5th Cir. 2015), do not apply because they do not "afford a caretaking function for cars that are parked due to law enforcement officer directive." Doc. No. 198, at 5. However, these cases do apply because it discusses the standard for the warrantless seizure of a vehicle based upon the public caretaking exception.

the owner and only occupant of the vehicle, was arrested while the vehicle was on a public street,[3] Dunn argues that leaving the vehicle on the side of the road could have impeded traffic or threatened public safety and convenience. *See* Doc. No. 200, at 2. Ferguson responds by stating that since Dunn pulled Ferguson over, "[i]t is unreasonable to consider Plaintiff's car [to be] in a hazardous location without considering the reason for the location which was initiated and controlled by Dunn." Doc. No. 198, at 3.

Yet, the pending question before the court is not whether Dunn's stop was lawful, which has already been determined, (Doc. No. 169), but rather, whether the seizure of Ferguson's vehicle following his arrest was unlawful. Ferguson failed to raise a genuine dispute of material fact that Dunn impounded the vehicle to protect it, its contents, and the public roadway in furtherance of the community caretaking function. Thus, Ferguson did not meet his burden of showing that a constitutional violation occurred. Therefore, the undersigned recommends dismissing Ferguson's Fourth Amendment unlawful seizure claim with prejudice.

ii.  *Fourth Amendment Unlawful Search of Vehicle Claim*

Ferguson also claims that Dunn searched his car in violation of the Fourth Amendment because the search lacked "articulable suspicion, probable cause, or a warrant or consent." Doc. No. 123, at 20. Warrantless searches without probable cause presumptively violate the Fourth Amendment unless an exception applies.[4] Dunn asserts that the search at issue was lawful because it constituted an "inventory search." Doc. No. 184, at 3. Officers can perform reasonable

---

[3] The traffic stop was effectuated on Highway 190E. *See* Doc. No. 198, at 12.

[4] Ferguson asserts that one of the exceptions conducted outside the judicial process without prior approval by judge or magistrate would "undoubtedly be § 545.305." Doc. No. 198, at 5. But this is incorrect. The "specific and delineated exceptions" referenced include investigatory detentions, searches incident to a valid arrest, seizure of items in plain view, exigent circumstances, consent searches, vehicle searches, container searches, and searches in which the special needs of law enforcement make the probable cause requirement impracticable. *See e.g.*, *Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1093 (5th Cir. 1997).

inventory searches of an impounded vehicle if the search is conducted pursuant to standardized regulations and procedures. *See Colorado v. Bertine*, 479 U.S. 367, 375 (1987); *Opperman*, 428 U.S. at 374. Thus, an inventory search of a seized vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger. *McKinnon*, 681 F.3d 203, 209–10 (5th Cir. 2012) (internal citations and quotations omitted).

Ferguson acquiesces that "officers may conduct an inventory search when they **lawfully** impound a vehicle," but the impound must be lawful. Doc. No. 198, at 6. (emphasis in original). As discussed above, the impoundment was lawful under the community caretaking exception. But Ferguson proceeds to argue that the search was "certainly not a 'standard inventory search.'" *Id.* Ferguson relies on a "DPS Public Information Response: 'Lost and Found THP-6 THP-3'" report (Doc. No. 198, at 11–12) to illustrate his point. Doc. No. 198, at 6. The report contains information about the arrest, including the location of the stop, Dunn's credentials, and details about the vehicle. *Id.* at 11. Next to "Vehicle Inventory?" the response says "No." *Id.* Thus, Ferguson asserts that if this was a standard inventory search, there would be a "paper trail somewhere and this is where that accounting would be lodged." *Id.* at 6.

However, Disc 1,[5] which depicts the entire arrest with audio, shows Dunn conducting an inventory search. Doc. No. 92, Ex. 6; Doc. No. 123, at 9.[6] Because there are "no allegations or indications that this videotape was doctored or altered in any way," the undersigned finds that the

---

[5] *See* Disc 1, at 50:30–51:01, 51:36–52:10 (Dunn informing other officers that he will conduct a vehicle inventory search); 56:05–1:19:44 (Dunn conducting vehicle inventory search and describing property as it is discovered).

[6] Ferguson's Fifth Amended Complaint incorporated the attachment of the disc from Ferguson's Second Amended Complaint by reference. *See* Doc. No. 169, at 2, n. 1.

video shows Dunn performing a standard inventory search. *See Scott v. Harris*, 550 U.S. 372, 379 (2009) (showing that a videotape of a car chase discredited factual issues raised by opposing parties as to what happened). Although Ferguson does not allege that the video was doctored or altered, he contends that it differs from what actually happened. *See* Doc. No. 198, at 6–7.

Ferguson maintains that Dunn "searched Plaintiff's car for evidence of criminal activity to justify Dunn's statement during the encounter that Plaintiff would kill Dunn despite there being no justification to make such statement." *Id.* at 7. He further claims that Dunn's search of his vehicle's engine compartment was not standard. *See* Ferguson Sur-reply, Doc. No. 201, at 9. ("Request 25: Admit or deny that it is not standard procedure to inventory a car's engine compartment. Response: Admit."). However, Dunn asserts that he "performed an inventory search to protect the contents of the vehicle" and that he "performed this search using standard procedures." Dunn Affidavit, Doc. No. 184-2, at 2. Dunn had a lawful basis to take custody of the vehicle, he conducted the inventory search promptly and efficiently at the scene of the traffic stop, and he examined the exterior and interior of the vehicle in a reasonable manner to protect the contents of the vehicle. *See* Disc 1, 56:05–1:19:44. Any deviation from standard operating procedure, such as his brief examination of the the engine compartment, is negligible and minor. *See United States v. Shaw*, 578 F. App'x. 363, 366 (5th Cir. 2014) (per curiam) (showing that minor deviations from an inventory search's standard procedure does not necessarily rise to a constitutional violation).

Further, Ferguson's allegations that Dunn conducted the search with the sole purpose to discover evidence that confirms that Ferguson is a "Republic of Texas type" (Doc. No. 201, at 5–6) does not change the outcome.

> The reasonableness inquiry under the Fourth Amendment is an objective one, wholly divorced from the subjective beliefs of police officers. [S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry.

See *McKinnon,* 681 F.3d at 210 (citing *United States v. Castro*, 166 F.3d 729, 734 (5th Cir. 1999)). Even if Dunn had an ulterior motive to search the vehicle, the inventory search was reasonable and remained within the parameters of the inventory search exception under the Fourth Amendment. Based on the totality of the circumstances, from the video of the traffic stop, Dunn's affidavit, and applicable Supreme Court and Fifth Circuit case law, it is clear that Dunn conducted a valid inventory search.

As a result, Ferguson does not meet his burden that Dunn violated his constitutional rights by conducting an inventory search of his vehicle, following his arrest and prior to the vehicle's impound. The undersigned finds that Ferguson did not establish a violation of his Fourth Amendment rights because Dunn conducted a reasonable inventory search to protect the contents of Ferguson's vehicle prior to impoundment. Therefore, the undersigned recommends dismissing Ferguson's Fourth Amendment unlawful search claim with prejudice.

### B. Clearly Established Right at Time of Violation

The facts Ferguson alleges do not establish a constitutional violation of search or seizure under the Fourth Amendment. Even if the undersigned found otherwise, Ferguson has still not shown a genuine dispute of material fact to defeat the second prong of Dunn's qualified immunity defense—whether Dunn's actions were objectively reasonable in light of the clearly established legal rules. Liability depends upon the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). In order to violate what is clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is

doing violates that right." *Id.* Therefore, the inquiry here is whether no reasonable officer would have impounded a vehicle following the arrest of its owner on a public street and inventoried its contents prior to doing so.

Ferguson did not allege any facts, submit any evidence, or provide any legal authority illustrating that a reasonable officer would not have inventoried the vehicle's contents or impounded the vehicle in accordance with public safety and community caretaking functions. Because Ferguson did not meet his burden to show that no reasonable officer would perform these acts, Dunn remains entitled to qualified immunity. Accordingly, the undersigned recommends dismissing Ferguson's claims of violations of the Fourth Amendment for searching and seizing his vehicle following his arrest.

### IV.     RECOMMENDATION

The undersigned recommends granting Defendant Dunn's Motion for Summary Judgment" (Doc. No. 184) and dismissing Ferguson's Fourth Amendment unlawful search and Fourth Amendment unlawful seizure claims against Dunn with prejudice.

### V.     OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) (Supp. IV 2011), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report; and (4) be no more than eight pages in length without leave of court to exceed the page limitation. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. Tex. Civ. R. CV-72(c). A party who objects to this Report is entitled to a de novo determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 10th day of January, 2019.

_____
Zack Hawthorn
United States Magistrate Judge